No. 44,503

The Urban Renewal Agency of Kansas City, Kansas, and The City of Kansas City, Kansas, *Appellants*, v. Josephine Bourquin Decker and Andrew J. Decker, et al., *Appellees*.

(415 P. 2d 373)

Opinion filed June 11, 1966.

*J. F. Steineger*, of Kansas City, argued the cause and *Clark Tucker* and *Paul Benedetti*, of Kansas City were with him on the brief for appellants.

*Edward H. Powers*, of Kansas City, argued the cause and was on the brief for appellees.

*Lester M. Goodell, Marlin S. Casey, Ernest J. Rice, Murray F. Hardesty, Glenn D. Cogswell, Gerald L. Goodell, Wayne T. Stratton, Robert E. Edmonds, Arthur E. Palmer, Thomas E. Wright* and *Roger R. Viets*, all of Topeka, were on the brief for the Urban Renewal Agency of Topeka, Kansas, *Amicus Curiae*.

*Robert L. Webb, Ralph W. Oman, Philip E. Buzick, William B. McElhenny, James D. Waugh, James L. Grimes, Jr., Donald J. Horttor, Terry L. Bullock* and *Stewart L. Entz*, all of Topeka, were on the brief for The Kansas Power and Light Company, *Amicus Curiae*.

*Stanley Garrity*, Wichita, was on the brief for the Kansas Gas and Electric Company, *Amicus Curiae*.

*Norman W. Jeter*, Hays, was on the brief for the Central Kansas Power Company, *Amicus Curiae*.

*Jack Glaves*, of Wichita, was on the brief for the Urban Renewal Agency of the Wichita, Kansas, Metropolitan Area, *Amicus Curiae*.

*John H. Morse, Barton E. Griffith* and *Richard L. Hedstrom*, all of Topeka, were on the brief for The State Highway Commission of Kansas, *Amicus Curiae*.

*Albert B. Martin, Wright W. Crummett* and *Wendell E. Yockey*, all of Topeka, were on the brief for the League of Kansas Municipalities, *Amicus Curiae*.

The opinion of the court was delivered by

FROMME, J.: This is an appeal from a hearing under the Eminent Domain Procedure Act, K. S. A. 26-501, *et seq.* The petition for eminent domain was filed by the Urban Renewal Agency and the City of Kansas City, Kansas, in the district court of Wyandotte county. Two of the property owners were permitted to file an answer objecting to the proceedings and claiming that the taking was not necessary to the lawful purposes of the petitioners. Over the objection of the petitioners the district judge proceeded to hear testimony concerning the necessity of the taking and the authority of the petitioners to take these particular tracts of real estate.

The proceedings embraced 76 defendants and included the Silver City Urban Renewal Project, Kans. R-12 covering an area commonly referred to as the Argentine district of Kansas City, Kansas.

The district judge approved the petition as to the entire project, except for three contiguous lots owned by Josephine Bourquin Decker and Andrew J. Decker. Commissioners were appointed to determine the value of all except these three lots. In the journal entry covering the proceedings the district judge found that under the provisions of K. S. A. 26-504, he was required to determine from evidence presented that the petitioners held the power to exercise eminent domain, and that a sufficient necessity existed to justify such a taking of this property. He further found that this determination was a judicial act rather than a statutory inquiry. By order the district judge deleted and removed the three contiguous lots owned by the Deckers from the proceedings. This was done on a finding that one lot was vacant and therefore not "blighted" within the meaning of the Urban Renewal Law, K. S. A. 17-4743, *et seq.;* that the landowner had made a bona fide offer to demolish and clear the old buildings from the other two lots and that the petitioners had not complied with certain provisions of the Urban Renewal Law, K. S. A. 17-4747 (*d*) relating to approval of the urban renewal plan.

No question is raised concerning the legality of the Urban Renewal Agency of Kansas City, Kansas, as a body corporate. No objections are raised as to the constitutionality of the Urban Renewal Law under which the Silver City Project was planned and later approved by the city commissioners. The testimony of the director of research and planning indicated that the urban renewal agency began planning this project in July 1961 and completed the same in 1963. The project had been approved by the city and by the federal government. The provisions of the urban renewal law with respect to public hearing have been followed. Copies of the proceedings leading up to and including the resolution authorizing and directing the filing of eminent domain proceedings were introduced in evidence. No question is raised as to their sufficiency or legality.

The controlling question raised in this appeal is whether the function of a district judge under the Eminent Domain Procedure Act of 1963 is judicial in nature. (L. 1963, Ch. 234.)

Prior to 1963 the case law of Kansas had uniformly held that the hearing contemplated in such proceedings was merely an inquest. The district judge was to determine from the petition as filed whether the petitioner was one of those bodies corporate clothed with the public interest and given the right of eminent domain to carry out its lawful purposes for the benefit of the general public. The second question for the district judge to determine from the petition was whether the property sought to be condemned and taken was necessary for the lawful statutory purposes of the petitioners. When these two questions were answered in the affirmative upon a reading of the petition, the right to condemn was approved. Additional pleading and introduction of evidence was not permitted.

This court in *State v. Boicourt Hunting Ass'n.*, 177 Kan. 637, 282 P. 2d 395 *held:*

"A condemnation proceeding instituted under the provisions of G. S. 1949, Ch. 26, Art. 2, is a special statutory proceeding, the procedure in such case is that prescribed in such chapter and, prior to the taking of an appeal as therein authorized, the provisions thereof neither contemplate nor comprehend the filing of pleadings challenging the validity of the condemnation or the right to appropriate the land involved in the proceeding." (Syl. 1.)

The court in *Boicourt* denied the landowner's right to file answer and cross-petition seeking injunctive relief in the condemnation proceeding and stated at page 645:

"It follows we have no quarrel with decisions such as *Smouse v. Kansas City*

*S. Rly. Co.,* 129 Kan. 176, 282 Pac. 183, and others of like nature cited by appellant in its brief, holding that injunction, brought by the landowner in a separate and distinct action in a court of competent jurisdiction, is a proper remedy where he contends that the condemning party is exceeding its powers, or where it is contended that the condemnation is ostensibly for a lawful purpose but really for an unlawful or improper one, such as a private use, or when an unnecessary amount of property is sought to be taken."

*Boicourt* has been cited and approved by this court many times. (*Moore v. Kansas Turnpike Authority,* 181 Kan. 840, 851, 317 P. 2d 384; *Cline v. Kansas Gas & Electric Company,* 182 Kan. 155, 156, 318 P. 2d 1000; *Franks v. State Highway Commission,* 182 Kan. 131, 136, 319 P. 2d 535; *Sutton v. Frazier,* 183 Kan. 33, 38, 325 P. 2d 338; *Smith v. Kansas Turnpike Authority,* 183 Kan. 158, 159, 325 P. 2d 63; *State Highway Commission v. Hembrow,* 190 Kan. 742, 743, 378 P. 2d 62.)

If the 1963 Eminent Domain Procedure Act did not change the nature of condemnation procedure which existed under the prior law then the substantive law and the decisions of this court under prior law would remain unchanged and unaffected by the 1963 act.

The historical background, legislative proceedings and changes made in the statute during the course of enactment may be considered by this court in determining legislative intent. (50 Am. Jur. Statutes, § 294, § 327, § 329; *Johnson v. Hensley,* 150 Kan. 96, 102, 90 P. 2d 1008.) These matters were thoroughly covered in the briefs of *Amici Curiae.* In summary, a study was made in 1961 and 1962 by the Judicial Council Advisory Committee. The committee recommendations were circulated from time to time to the lawyers and judges over the state to consider a general revision of the Code of Civil Procedure. The advisory committee's notes indicate an intention to include eminent domain as a part of the Code of Civil Procedure and to convert the same into a judicial proceeding. The Kansas Judicial Council was confronted by controversial objections. It was feared the former statutory inquest might be invested with a judicial robe. The Council removed the sections relating to eminent domain from the Code of Civil Procedure so the Eminent Domain Procedure Act thereafter was carried separate and apart from the Code of Civil Procedure. The bill as changed received the preliminary approval of the Senate Committee on Judiciary and was introduced in the legislature. During the legislative process much change and amendment was made in the act to strike therefrom references from which it might be inferred a judicial proceeding was contemplated.

When the 1963 Eminent Domain Procedure Act was finally enacted the legislature had removed from the original bill all provisions and references to judicial proceedings. There were positive provisions substituted which required the judge to appoint appraisers *"If the judge finds from the petition"* that the petitioner has the power of eminent domain and the takings are necessary to the lawful corporate purposes of the petitioner.

The appellee in support of the proceedings below reads into the Eminent Domain Procedure Act some requirement which would necessitate positive pleadings, introduction of evidence and findings of fact and law. Such would require the district judge to re-examine the program and plans of the urban renewal agency formulated after years of preparation and planning as authorized and directed by the Urban Renewal Law (K. S. A. 17-4743, *et seq.*). This might well have the effect of permitting a district judge in eminent domain proceedings to substitute his own personal judgment for that of the municipality in exercising the power delegated to it by K. S. A. 17-4746 in making a finding of necessity.

The change made by K. S. A. 26-503 in requiring publication of a notice at least five (5) days in advance of the date fixed by the court for consideration of the petition and appointment does not contemplate any judicial action. It is indicative of a desire by the legislature to give the landowner time to examine into the proceedings and permit him to file separate action to protect his rights. (See *Offen v. City of Topeka,* 186 Kan. 389, 350 P. 2d 33.)

In *Sutton v. Frazier,* 183 Kan. 33, 325 P. 2d 338, the court said at page 37:

"An eminent domain proceeding is a special statutory proceeding and is not a civil action covered by the code of civil procedure. The proceeding is administrative rather than judicial and its nature is the same whether conducted by or before a district court, or any judge thereof, the probate court, or its judge, a board of county commissioners or any other official board or tribunal authorized by the legislature to act in that capacity. The amount to be paid is determined by commissioners or appraisers and not by the board or tribunal appointing them or with whom they filed their report. *The report of the amount found due is an award and is not a judgment. Prior to an appeal from the award the proceeding is in the nature of an inquest."* (Emphasis added.)

The above law is in accord with the provisions of K. S. A. 26-508 wherein an award is made and no judgment is provided for until after an appeal is docketed and tried as any other civil action. (K. S. A. 26-511.)

The legislature has the inherent power of eminent domain limited only by constitutional restrictions. Such power may be delegated by the legislature to any public authority to be exercised as directed. So the power of eminent domain as to urban renewal has been given by the legislature to the municipality to determine that slum or blighted areas exist in such municipality and the rehabilitation, conservation, or redevelopment of such areas is necessary in the interest of public health, safety, morals or welfare of the residents of the municipality. The municipality has the exclusive right within its statutory authority in the first instance to determine what lots, parcels or tracts of land are to be taken, after public hearing provided by statute, and then file a petition to exercise the right of eminent domain. The presumption is that public agencies and officers vested with discretionary administrative powers will perform their duties in a proper manner and exercise their powers in good faith. Under our law this exercise of discretion is not subject to judicial review unless there is proof of fraud, bad faith or abuse of discretion. Even when fraud, bad faith or abuse of discretion is claimed, such questions can be litigated only in a separate independent action such as the extraordinary remedy of injunction. (K. S. A. 17-4748, 17-4749. *In re Estate of Kline,* 175 Kan. 864, 267 P. 2d 519; *Sutherland v. Ferguson,* 194 Kan. 35, 397 P. 2d 335; *State Highway Comm. v. Ford,* 142 Kan. 383, 387, 46 P. 2d 849; *Soden v. State Highway Comm.,* 192 Kan. 241, 244, 387 P. 2d 182.)

The 1963 Eminent Domain Procedure Act did not change the character of the proceedings in a condemnation action. Such proceedings remain statutory in the nature of an inquest. They are not judicial in nature and the procedures approved by prior case law in this state should be followed.

In accordance with the foregoing decision the district court's judgment is reversed as to the appellees, Josephine Bourquin Decker and Andrew J. Decker with instructions to re-instate in the condemnation proceedings the three lots owned by them. The judgment of the lower court is affirmed as to the rest and remainder of the real property described in the petition.

It is so ordered.