No. 47,873

In the Matter of the Condemnation of Land for Controlled Access Highway Purposes, Appeal of William R. Rostine, Boyd L. Rostine, and the Hutchinson Concrete Company, *Appellants and Cross-Appellees,* v. City of Hutchinson, Kansas, *Appellee and Cross-Appellant.*

(548 P. 2d 756)

Opinion filed April 10, 1976.

*Paul L. Aylward,* of Ellsworth, and *Frank S. Hodge,* of Hutchinson, argued the cause, and *Robert E. Laubengayer,* of Ellsworth, was with them on the brief for the appellants and cross-appellees.

*Robert J. Gilliland* and *John F. Hayes,* of Gilliland, Hayes & Goering, of Hutchinson, argued the cause, and *Charles K. Hyter,* city attorney, was with them on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

OWSLEY, J.: This is a partial taking condemnation case in which error is predicated on the admission and exclusion of evidence offered to show the before and after value of the condemned property.

On May 9, 1972, the City of Hutchinson, appellee herein, filed a petition in the district court of Reno County, pursuant to its power of eminent domain (K. S. A. 26-201), seeking to condemn a certain described tract of land owned by William R. Rostine, Boyd L. Rostine, and The Hutchinson Concrete Company, appellants herein. The petition alleged the taking of the private property was necessary for the purpose of acquiring a right of way for the construction of a grade separation facility to carry a controlled access highway over a railroad right of way and other streets in the City of Hutchinson with ramps and roadways incident thereto. The description in the petition specifically provided that the "[l]and abutting the above described right of way easement shall have no right or easement of access thereto."

Appellants' tract of land consisted of a total of 15.951 acres prior to the taking. Under its statutory power of eminent domain the City of Hutchinson condemned a 4.292 acre section cutting diagonally through the middle of the tract, leaving 4.4 acres with improvements on the east side and 7.259 acres of vacant land on the west side. Appellants operated a concrete products manufacturing business on the tract of land. The plant located on the property consisted of a large building containing manufacturing equipment, a block machine, automation machines, mixers, and boilers; a metal storage building; two storage silos; and a double T form. None of the improvements were located on the section of land being condemned except the double T form. The double T form was a steel form set up as two "T's," four feet wide and ninety feet long. It was used to precast concrete pieces of different lengths, including feed bunks and fences. It was connected to the rest of the system with a steam line from the boiler room and it was bolted down on a concrete foundation.

Pursuant to the petition of condemnation filed by the city, the trial court appointed three appraisers to determine the damage resulting from the taking. On June 21, 1972, the appraisers filed a report with the court wherein they fixed the value of the property

before the taking at $133,683 and the value after the taking at $116,181, resulting in an award of $17,502.

Appellants filed an appeal to the district court from the award of the court appointed appraisers. A pretrial conference was held on October 10, 1973, at which time the parties agreed the date of taking was June 27, 1972. The pretrial order stated that the question of whether the double T form was to be considered part of the real estate would be briefed by the parties. On June 6, 1974, the City of Hutchinson filed a pretrial motion requesting the court to allow it to amend its original petition to state that the appellants would have the right of access between the two separated tracts as provided by the revised plans of the State Highway Commission. In support of its motion the City alleged the court appointed appraisers and value witnesses for the condemnor made their appraisals in contemplation of the right of ingress and egress over the condemned tract. The City's motion to amend its petition was subsequently denied by the court.

Trial before a jury was commenced on November 5, 1974. The landowners' valuation witnesses, John C. Oswald and D. J. Van Sickle, appraised the damage at $86,500 and $83,435, respectively. In contrast, the city's witnesses, E. E. Frizell and W. W. Ferguson, appraised the damage at $17,502 and $10,453, respectively. The jury, after receiving instructions from the court, returned an award to the landowners in the amount of $23,250. The landowners appeal from the award claiming it was based on improper evidence. A cross-appeal from the trial court's denial of its motion to amend the petition was filed by the city, but the cross-appeal has since been abandoned.

The landowners' principal contention on appeal is that the trial court erred in failing to strike the testimony of the city's valuation witnesses, Ferguson and Frizell. They attack their testimony on the following grounds:

(1) Each of them erroneously used the summation method of appraisal.

(2) Each of them erroneously failed to include the following improvements in their appraisal:

(a) machinery and equipment;

(b) railway spur and silo;

(c) double T form.

(3) Witness Ferguson's appraisal was based on a date different from the date of taking.

(4) Each of them improperly reflected in their appraisal the right to use the condemned right of way for access between the severed tracts.

Since this case involves a partial taking the measure of damages is controlled by the statutory directives of K. S. A. 26-513 (c) which provides:

"(c) *Partial taking.* If only a part of a tract of land or interest is taken, the compensation and measure of damages are the difference between the value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking."

In every partial taking case there are only two issues—the value of the whole before the taking and the value of the remaining property after the taking. (*City of Wichita v. May's Company Inc.,* 212 Kan. 153, 510 P. 2d 184.) To assist the court or jury in ascertaining the amount of damages the legislature has designated fifteen factors to be considered if shown to exist. The statute, however, directs that the factors are not to be considered as separate items of damage, but are only to be considered as they affect the total compensation. (K. S. A. 26-513 [d].) This latter requirement is a codification of the rule of law of this state which prohibits the use of the "summation method" of valuation.

The "summation method" denotes a process of appraisal whereby each of several items that contribute to the value of real estate are valued separately and the total represents the market value thereof. Use of this method of appraisal has generally been rejected since it fails to relate the separate value of the improvements to the total market value of the property. (1 A. L. R. 2d Anno., Eminent Domain—Valuation as Unit, p. 878.) In contrast, the "unit rule," which is the generally accepted method of valuation, denotes a process of appraisal whereby the total value of real estate is first determined without placing a value on each of the separate contributing items. Consideration of the value of buildings and improvements is limited to the extent they enhance the value of the land taken. The same rule applies to machinery or other articles of personal property which have become affixed to the real estate. (4 Nichols on Eminent Domain, [3d Ed.], § 13.11; 2 Orgel on Valuation Under Eminent Domain, § 189, p. 4.) In *Hoy v. Kansas Turnpike Authority,* 184 Kan. 70, 334 P. 2d 315, we emphasized the requirement in this state that improvements be considered only to the

extent they enhance the value of the whole property and not as separate items:

"Improvements, such as here involved, located upon land which is condemned, are not to be valued separately but are a part of the real estate and must be considered in determining the value of the land taken. . . ." (p. 74.)

(See, also, *Saathoff v. State Highway Comm.*, 146 Kan. 465, 72 P. 2d 74; *Reiter v. State Highway Commission*, 177 Kan. 683, 281 P. 2d 1080.) It is the landowners' contention that the city's witnesses improperly used the summation method to arrive at their appraisal figures.

Our review of the record discloses Frizell testified on direct examination as to the total market value of the property prior to the taking and the total market value of the property after the taking. On cross-examination he was questioned by the landowners' counsel concerning the value of the separate items of improvements and the basis for his appraisal. We cannot assign error to Frizell's testimony concerning the value of the separate items when that evidence was elicited by the landowners on cross-examination. His later testimony as to the contributory value of the separate items considered by him in his appraisal could be a valuable aid to the jury in understanding his overall figures. (See, *United States v. 679.19 Acres of Land, Etc.*, 113 F. Supp. 590 [D. C. N. D. 1953].) Furthermore, we note from the record that appellant did not object to Frizell's testimony on this ground at trial.

The record indicates Ferguson testified initially on direct examination as to the method of his appraisal. He testified that as his first step he valued the land at $2,203 per acre, based on the market value of comparable properties. He then testified that the depreciated cost value of the main building was $69,840, and the total value of all the improvements was $77,864, "except the machinery and equipment used to manufacture blocks." Apparently, Ferguson used the improvement values given him by a professional estimator, then figured the depreciation. He also allowed some damage to the remaining west tract and the double T form. Based on these separate items, Ferguson testified the total value of the property before the taking was $112,810; the total value of the property after the taking was $102,357; and the resulting damage was $10,453.

On cross-examination Ferguson was questioned concerning his

method of appraisal. As the following excerpt indicates, Ferguson insisted he had followed the proper method of valuation:

"Q. If the Court should instruct in this case that the law of Kansas is that the way you arrive at what is to be paid as just compensation for the taking of property, buildings, machinery, land or anything else is that first you arrive at the fair market value of the entire tract then you determine the fair market value of the remaining tract burdened as it might be with whatever easement it might be burdened with, that the difference represents just compensation—

"A. That's fundamental.

"Q. You didn't do it that way.

"A. Yes, I did, I certainly did."

And later on cross-examination he stated:

"Q. (By Mr. Aylward) Now, as I understand it, Mr. Ferguson, the way you arrived at your after value was not considering it as a whole first but considering it in separate units and considering three things, one, the 4.29 acres taken, the value of that separately, is that correct?

"A. The before and after appraisal according to law requires you to take the before value of the whole property, the after value of the whole property and get the difference, but from the standpoint of the ordinary layman, he asks where did the damage come from and so I broke it down for the convenience of anybody who might be interested in to the three elements I mentioned. That's my answer."

At the close of his testimony the landowners moved to strike Ferguson's entire testimony on the ground, among others, that he improperly used the summation method of appraisal. The trial court overruled the motion.

Although the record is somewhat confusing, it appears Ferguson did testify as to the separate value of the improvements prior to testifying as to the before and after value of the entire tract. By so doing he violated the rule of valuation expressed in *Hoy v. Kansas Turnpike Authority,* supra, and other cases, and in effect he used the summation method.

In spite of his failure to comply with the proper procedures of the unit rule, we cannot assign prejudicial error in the trial court's refusal to strike his testimony. As evidenced by his figures and computations, Ferguson did not attribute any loss in value to the improvements by reason of the partial taking, other than minor damage to the double T form. Frizell also agreed there was no damage to the improvements as a result of the condemnation of the right of way. It must be remembered that all the improvements, other than the double T form, were located on the remaining east section of the landowners' property. Under these circumstances

Ferguson's separate valuation of the improvements would not have significantly affected the jury's award. Accordingly, while we disapprove of Ferguson's testimony as to the separate value of the improvements, we do not believe it was sufficiently prejudicial to necessitate a reversal of the judgment.

The landowners next attack the city's valuation witnesses for their failure to include the value of certain improvements in their appraisals. We have previously stated that in a partial taking case the measure of damages is the total market value of the entire property before the taking, minus the total market value of the remaining property after the taking. A strict interpretation of this rule would require the inclusion of the contributory value of every improvement located on the property. The city, however, argues that once a witness has qualified as an expert the court cannot regulate the factors he uses or the mental process by which he arrives at his appraisal. Borrowing the rule as expressed in the opinions of *State Highway Commission v. Lee*, 207 Kan. 284, 485 P. 2d 310, and *City of Bonner Springs v. Coleman*, 206 Kan. 689, 481 P. 2d 950, the city claims these matters can only be challenged by cross-examination. The landowners fail to mention the qualification of this principle recognized in *Morgan v. City of Overland Park*, 207 Kan. 188, 483 P. 2d 1079. In that case we noted that the responsibility of defining the extent of compensable rights is in the courts and if the value testimony is based on noncompensable items or the credibility of the testimony is otherwise destroyed, the testimony should be stricken. From a practical standpoint, after qualifying as an expert a valuation witness may testify as to his appraisal. Unless he destroys his own credibility on direct, the opposing party must await cross-examination to disclose facts showing the witness' testimony was based on noncompensable items or the credibility of his testimony was otherwise destroyed. The difficult question arises when the trial court, and this court on appeal, must determine whether a witness' valuation testimony should be stricken.

Frizell admitted he did not assign a dollar value to the machinery, equipment, rail spur, and silo. Ferguson testified he did not appraise any of the equipment and machinery in the building since he did not feel it was affected by the taking, and he considered it impossible to place an exact value on it. It likewise does not appear the witnesses added the value of the rail spur and the silo to the before and after figures. Both witnesses stated these items were

there before the taking and after the taking, and for that reason they did not consider it essential to value all of them.

From what we have heretofore said, it is clear that the two witnesses should have included the value of all the machinery, equipment, silo, and rail spur, which were affixed to the real estate, in figuring their before and after value; nevertheless, the record discloses both witnesses considered these items in arriving at their appraisals. Although they did not credit additional value because of these items, it was because they did not feel these items were affected by the taking. In addition, it is significant to note that the improvements in question were not located on the condemned tract, but were on the property remaining. The failure of the witnesses to take into consideration all the items of improvement was repeatedly brought to the attention of the jury during cross-examination, thereby giving the jury the opportunity to weigh their testimony in light of the failure to include these items in their appraisals. Unless the testimony as to the appraisal is seriously prejudicial it affects the weight rather than the competency of the evidence. (See, 5 Nichols on Eminent Domain [3d Ed.], § 18.42.) Under these circumstances we cannot assign as reversible error the failure to include the value of these improvements in the before and after value of the total property.

The testimony regarding the valuation of the double T form deserves special attention. The double T form was located on the land taken. The landowners point out that machinery bolted and attached to a concrete foundation is a fixture and part of the real estate, citing Geppelt v. Stone Co., 94 Kan. 560, 146 Pac. 1157. The city does not question the fact the double T form was a fixture, but claims the award of the jury indicates they considered the matter by making the award higher than the appraisal of the city's witnesses. The double T form was a fixture and its contributory value should have been included in an appraisal of the property. Although it was error for the city's valuation witnesses to fail to include the contributory value of the double T form, it was not prejudicial to the extent their testimony should have been stricken. The trial court properly instructed the jury that "heavy machinery . . . bolted to a concrete foundation . . . [is] thereby treated as real estate and valued to the extent that such fixtures enhance the value of the property." Moreover, there was testimony by the landowners' witness from which the jury could arrive at a value for the double T form. The nature of the testimony, when considered in light of the

instruction, was not seriously prejudicial and the failure to value the double T form affected its weight rather than its competency.

The landowners' next claim of error relates to the date of Ferguson's appraisal. They point out he made his appraisal in January, 1972, and the date of taking was June 27, 1972. Although the witness testified there was no material change in the property, and his early appraisal would have been the same on the date of taking, the landowners complain he should have amended his appraisal upward to reflect the increased cost at the date of taking. The testimony of an expert valuation witness based on an appraisal prior to the date of taking is admissable where the witness testified the value of the property remained unchanged. (*Taylor v. State Highway Commission*, 182 Kan. 397, 320 P. 2d 832; *Mai v. City of Garden City*, 177 Kan. 179, 277 P. 2d 636.)

The landowners argue Frizell improperly reflected in his appraisal the right of access between the severed tracts. The original condemnation petition filed by the city specifically stated there would be no right of access across the condemned property. The city later tried to amend its petition to provide for access between the severed tracts, but the trial court denied the motion. The validity of that ruling is not questioned on this appeal.

In support of their claim that Frizell considered access between the tracts, the landowners point to an allegation by the city in its motion to amend the petition, which stated that the court appointed appraisers and the value witnesses for the condemnor (including Frizell) made their appraisals contemplating the right of access across the condemned property. If this were true, serious error would have been committed. The city, however, now claims it was mistaken when it made the statement. After reviewing the record we must agree. Frizell testified he considered damage due to the loss of access to the west severed tract and felt the west portion should be penalized because the landowners would have to drive around to get to the other land if they wanted to use it for storage. This is in conflict with the statement made by the city in its motion. Any confusion created by this conflict was undoubtedly cleared up by the trial court's instruction to the jury directing them not to consider any "promissory statements or declarations of future intention by the condemning authority, such as pertaining to roadways under the railroad overpass." The landowners' contention on this point is without merit.

The landowners also argue the trial court erred in excluding

testimony of a valuation witness concerning his appraisal of adjoining property involved in the same project. The record discloses the adjoining property was not condemned, but was conveyed by deed to the highway department. Apparently, the landowners were attempting to show the difference between the purchase price of the property and the amount of the appraisal. The purchase price of property which is subject to condemnation and is transferred by deed is not admissible in evidence. (*Searcy v. State Highway Comm.*, 145 Kan. 709, 67 P. 2d 534.) Such a transaction is not an arm's-length sale between parties since the threat of condemnation affects the price required to be paid. There is no assurance the transaction is a sale between a "willing buyer" and a "willing seller." The trial court did not err in excluding the right of cross-examination to the extent requested by the city.

The final point raised by the landowners is that the trial court erred in restricting the scope of cross-examination of Frizell as to a prior appraisal. On cross-examination Frizell was asked whether he had arrived at any other figures for an appraisal of the condemned property. Out of the presence of the jury it was established that as one of three court appointed appraisers, Frizell had originally appraised the difference in the before and after value at $14,360. The appraisers submitted an award of $17,502 to the court, which was the value given by Frizell on direct examination. The trial court sustained the city's objection and did not permit the landowners' counsel to inquire into the earlier appraisal.

The landowners do not dispute the general rule that the scope of cross-examination in any particular case is a matter resting within the discretion of the trial court. (*Regnier Builders, Inc., v. Linwood School District No. 1,* 189 Kan. 360, 369 P. 2d 316.) They emphasize, however, that the discretion of the trial court is not absolute, and that in eminent domain proceedings cross-examination of expert witnesses should be permitted to the fullest extent so the jury may determine the probative value of their testimony. (*Bourgeois v. State Highway Commission,* 179 Kan. 30, 292 P. 2d 683.)

After weighing these considerations, we do not believe the trial court's exercise of its judgment in refusing to permit cross-examination as to the prior appraisal constitutes an abuse of its discretion. It is not unusual for court appointed appraisers to arrive at one value for the damage caused by a taking through efforts of compromise and settlement, as was obviously the case here. In such

circumstances it is proper for the trial court to restrict the scope of cross-examination to the final appraisal agreed upon and signed by the appraiser. The requirement of the law that three appraisers be appointed necessarily contemplates they will not arrive at the same valuation. Adjustment and compromise supply the figure reported to the court. We cannot assign prejudicial error in the failure of the trial court to permit inquiry into an appraisal made as a result of the court's direction which might differ from the appraisal report filed by the witness acting in concert with two other court appointed appraisers.

The judgment of the trial court is affirmed.