No. 51,077

In the Matter of the Condemnation of Land for Municipal Purposes

CITY OF MANHATTAN, KANSAS, *Appellant,* v. REX J. KENT and EMMA J. KENT; STEVENSON SIGN SERVICE, INC.; THOMAS SIGN SERVICE and THE FEDERAL LAND BANK OF WICHITA, *Appellees.*

(618 P.2d 1180)

Opinion filed November 1, 1980.

*Charles D. Green,* of Arthur, Green, Arthur & Conderman, of Manhattan, argued the cause and was on the brief for the appellant.

*Howard W. Harper,* of Harper & Hornbaker, Chartered, of Junction City, argued the cause and was on the brief for appellees Kent.

*Thomas P. Fay,* of Fay & Fay, of Manhattan, was on the brief for the appellee-cross-appellant Thomas Sign Service.

The opinion of the court was delivered by

McFARLAND, J.: The City of Manhattan instituted proceedings in eminent domain for a total taking of a 71.43-acre tract of land for airport expansion purposes. Thomas Sign Service leases, for sign purposes, a 50-foot by 2,300-foot strip of the tract adjacent to the Kansas Highway 18 right-of-way. The appraisers' report found the total value of the tract to be $258,650 and, in an

advisory report, stated that $21,000 of said value was attributed to the signs. The City and the landowners, Rex J. and Emma J. Kent, appealed to the district court.

A dispute arose in district court as to the proper extent of the lessee's participation in the upcoming jury trial. The City maintains: (1) Lessee has no right to participate in the jury trial wherein the fair market value of the land as a unit is determined; and (2) the lessee could only participate in a post-trial proceeding pursuant to K.S.A. 26-517 for division of the award. The landowners and lessee maintain: (1) Lessee has the right to unlimited participation as a separate party thereto; (2) lessee is entitled to introduce evidence as to the specific dollar value of its leasehold interest; (3) the jury should be instructed to determine the value of the leasehold, separate and distinct from the value of the unencumbered whole; and (4) any limitation on the lessee's participation at trial would deny it due process of law.

The district court determined that the lessee would be afforded limited participation at trial and set guidelines for the lessee's participation. The court held *inter alia* that evidence could not be admitted concerning the specific value of the leasehold interest and that the leasehold interest could only be considered as a factor in arriving at the fair market value of the tract.

The condemner, landowners, and lessee were dissatisfied with the interlocutory order and this appeal was duly perfected pursuant to K.S.A. 60-2102(*b*). The case before us is on transfer from the Court of Appeals. Inasmuch as the landowners and the lessee have identical positions on the single issue on appeal, for simplification we will henceforth refer only to the lessee.

The sole issue on appeal is the propriety of the district court's determination of the extent of the lessee's participation in the jury trial, including the exclusion of evidence as to the specific value of the leasehold interest.

The appealed-from interlocutory order provides:

"By means of clarification, the landowner and lessee will be at counsel table together and the landowner will conduct the trial in all respects except when the lessee desires to clarify a point directly or otherwise participate directly to protect the lessee's interest.

"Inasmuch as the landowner and the lessee have a common interest as owners in the tract at this stage of the proceedings, to wit: a desire for the highest award possible, I feel it would be prejudicial to the condemner to be limited to three value witnesses and give the landowner and lessee more than three value wit-

nesses. Therefore, the landowner and the lessee are hereby limited to a total of three value witnesses each plus, of course, the landowner himself who generally may testify as to value. The landowner and lessee must ascertain among themselves which three value witnesses will be used. Because of the common goal for a maximum award, I do not foresee any dispute in this regard. If one arises, it should be taken up with the Court prior to trial.

"The lessee will be allowed to ask questions on voir dire if necessary but pursuant to K.S.A. 60-247(c), in the discretion of the Court, additional peremptory challenges may or may not be allowed.

"The lessee may present separate evidence of its own, may make objections and may argue to the jury, if relevant, if not cumulative or repetitious of the landowner's evidence or cross-examination and if necessary to protect the lessee's interest.

"When appropriate under the general guidelines heretofore set forth, the lessee may directly examine the landowner's witnesses and may cross-examine the condemner's witnesses.

"The lessee's direct participation in the trial will only be necessary when the landowner and the lessee cannot agree on the joint presentation of evidence and cross-examination.

"Evidence will not be allowed concerning the specific value of the leasehold interest. It may be considered as a factor only in arriving at the market value of the tract at the time of taking.

"Other procedural questions will be disposed of as they might arise."

Without burdening this opinion with an exhaustive review of the law of eminent domain, some basic principles need to be stated.

A person may not be deprived of his property without due process of law. If his property is taken by exercise of the power of eminent domain, the procedure must be adequate to provide just compensation. Within these boundaries the legislature may determine the mode of exercising the right of eminent domain. These concepts were expressed in 27 Am. Jur. 2d, Eminent Domain § 376, pp. 241-243, in relevant part as follows:

"Inasmuch as both federal and state constitutions protect all persons from being deprived of their property without due process of law and warrant the equal protection of the law, proceedings to condemn property must be such as not to violate these guaranties. But in the absence of any provision in the organic law prescribing a contrary course, the mode of exercising the right of eminent domain is within the discretion of the legislature. In other words, the mode of exercising the right of eminent domain is generally legislative. The due process clause does not guarantee to the citizen of a state any particular form or method of state procedure nor a right to trial by jury. Its requirements are satisfied if he has reasonable notice and reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it. In condemnation proceedings as in

lawsuits generally, the Fourteenth Amendment is not a guaranty that a trial shall be devoid of error. To bring about a taking without due process of law by force of such a judgment, the error must be gross and obvious, coming close to the boundary of arbitrary action. Nor does the equal protection clause exact uniformity of procedure. The legislature may classify litigation and adopt one type of procedure for one class and a different type for another. That condemnation proceedings are conducted on behalf of the state is in itself sufficient basis for the exercise of legislative judgment in providing for it a different procedure from that prescribed for the exercise of eminent domain by a corporation. Alternative procedures for condemnation may be prescribed by the legislature, provided each procedure satisfies the demands of due process and equal protection, even though the election as to which procedure is to be used is in the condemnor only.

"In any event, however, the procedure must be adequate to provide just compensation."

A lessee is an owner of the property and is entitled to just compensation if his leasehold is damaged from the exercise of eminent domain. *Eisenring v. Kansas Turnpike Authority,* 183 Kan. 774, 332 P.2d 539 (1958). See also eminent domain procedure act, K.S.A. 26-501 *et seq.,* which speaks of "interest to be taken," "parties in interest," "damages to all interest [interests]," etc.

The states have developed a variety of procedures to determine just compensation to the owners of various interests in one tract of land. See Annot., Condemnation Proceedings—Bifurcated Trial, 94 A.L.R. 3d 696, which discusses the various means employed. Some states have procedures for determining the total value and the value of separate interests, all in one proceeding. Others separate the determination of total value from the determination of damages to particular interests in accordance with procedures prescribed by statute or judicial construction.

Statutorily, Kansas has a bifurcated procedure. K.S.A. 26-508 provides:

"If the plaintiff, or any defendant, is dissatisfied with the award of the appraisers, he may, within thirty (30) days after the filing of the appraisers' report, appeal from the award by filing a written notice of appeal with the clerk of the district court. In the event any parties shall perfect an appeal, copies of such notice of appeal shall be mailed to all parties affected by such appeal, within three (3) days after the date of the perfection thereof. An appeal by the plaintiff or any defendant shall bring the issue of damages to all interest [interests] in the tract before the court for trial *de novo.* The appeal shall be docketed as a civil action and tried as any other civil action: *Provided, however,* The only issue to be determined therein shall be that of just compensation to be paid for the land or right therein taken at the time of the taking and for any other damages allowable by law."

K.S.A. 26-513(*d*) provides in relevant part:

"(*d*) *Factors to be considered.* In ascertaining the amount of compensation and damages as above defined, the following factors, without restriction because of enumeration, shall be given consideration if shown to exist but they are not to be considered as separate items of damages, but are to be considered only as they affect the total compensation and damage under the provisions of subsections (*b*) and (*c*) of this section:"

K.S.A. 26-517 provides:

"In any action involving the condemnation of real property in which there is a dispute among the parties in interest as to the division of the amount of the appraisers' award or the amount of the final judgment, the district court shall, upon motion by any such party in interest, determine the final distribution of the amount of the appraisers' award or the amount of the final judgment."

When K.S.A. 26-508 speaks of just compensation for the land or *right therein taken* it is referring to what the condemner is taking—the fee or a lesser taking, such as an easement.

*Urban Renewal Agency v. Naegele Outdoor Advertising Co.,* 208 Kan. 210, 214, 491 P.2d 886 (1971), discussed at some length the nature of division proceedings authorized by K.S.A. 26-517. The court stated:

"This 1969 enactment [K.S.A. 26-517] plainly authorized the district court to act as a forum for the resolution of disputes among the parties in interest as to the *division* of the amount of an award, either as made by the appraisers or upon final judgment after appeal. The determination of such disputes is judicial work, adversary in nature, as contrasted with the usual type of inquest or inquisition where the inquiry is largely or wholly in a nonadversary setting. We think the rule announced in *Decker* [197 Kan. 157, 415 P.2d 373 (1966)] and like cases inapplicable to a proceeding authorized by 26-517 of our eminent domain procedure act. Accordingly, we hold that the function placed upon a district court in determining final distribution of the appraisers' award in an eminent domain proceeding is judicial in nature so that an appeal lies to this court from the action taken."

The court in *Naegele* reaffirmed both the right of a tenant to share in the award if damaged by the exercise of eminent domain and the following statement from *Phillips Petroleum Co. v. Bradley,* 205 Kan. 242, 247, 468 P.2d 95 (1970):

"It has long been the rule that where leased property is taken by eminent domain, it is ordinarily valued as though held in a single ownership rather than by separately valuing the interests of the lessor and lessee, and the compensation for the property taken or damaged is apportioned by the district court between the lessor and lessee according to their respective interests. The condemner has no interest in the apportionment proceedings. It has met its obligation when it has paid into court the total amount of the award. (29A C.J.S., Eminent Domain, § 198, p. 873.)"

The citation from *Phillips* is a recognition of the undivided fee rule discussed in 4 Nichols on Eminent Domain § 12.36 [1], pp. 685-687 (3d ed. 1979), as follows:

"It was formerly one of the most firmly established principles of eminent domain, and it is still the law in the usual case, that when a tract of land is taken by eminent domain, as the land itself is taken by a paramount title rather than the separate estates of different persons having interests in the land, the compensation awarded is for the land itself and not for the sum of the different interests therein. The duty of the public to make payment for the property which it has taken is not affected by the nature of the title or by the diversity of interests in the property. The public pays what the land is worth, and the amount so paid is to be divided among the various claimants, according to the nature of their respective estates."

In *Montgomery Ward v. Sterling*, 185 Colo. 238, 523 P.2d 465 (1974), the Colorado Supreme Court, in affirming a slight variation of the undivided fee rule, noted two advantages therein: (1) All condemnees are in a united position of seeking to maximize the total award in the first proceeding and only in the subsequent division proceeding do they become adversaries; and (2) the time lag between determination of award and division provides an opportunity for the owners of interests to settle the division among themselves.

In *Rostine v. City of Hutchinson*, 219 Kan. 320, 323, 548 P.2d 756 (1976), the court discussed the "unit rule" and the "summation method" relative to determining value as follows:

"To assist the court or jury in ascertaining the amount of damages the legislature has designated fifteen factors to be considered if shown to exist. The statute, however, directs that the factors are not to be considered as separate items of damage, but are only to be considered as they affect the total compensation. (K.S.A. 26-513[*d*].) This latter requirement is a codification of the rule of law of this state which prohibits the use of the 'summation method' of valuation.

"The 'summation method' denotes a process of appraisal whereby each of several items that contribute to the value of real estate are valued separately and the total represents the market value thereof. Use of this method of appraisal has generally been rejected since it fails to relate the separate value of the improvements to the total market value of the property. (1 A.L.R. 2d Anno., Eminent Domain—Valuation as Unit, p. 878.) In contrast, the 'unit rule,' which is the generally accepted method of valuation, denotes a process of appraisal whereby the total value of real estate is first determined without placing a value on each of the separate contributing items. Consideration of the value of buildings and improvements is limited to the extent they enhance the value of the land taken."

This court again approved the unit rule in *Ellis v. City of Kansas City*, 225 Kan. 168, 589 P.2d 552 (1979).

The unit rule as to improvements on the property and the undivided fee rule are consistent with each other and in harmony with the statutory requirement that the initial determination must be confined to the fair market value of the land as a unit at the time of the taking. In unusual circumstances, such as where the fee interest is of lesser value than another interest or aggregate of interests, exceptions to the general rule are sometimes made, but this is not the situation herein. ·

The interlocutory order herein actually deals with two different areas. The exclusion of evidence as to the specific value of the leasehold, but permitting the leasehold to be considered as a factor in determining the market value of the land, relates to the purpose and scope of the trial. The balance of the order deals with the extent of the lessee's participation in the trial.

On the rationale hereinbefore expressed we conclude the district court did not err in excluding evidence of the specific value of the leasehold interest but permitting the leasehold interest to be considered as a factor in arriving at the market value of the tract at the time of the taking.

As we have previously determined, Kansas has a bifurcated procedure wherein the total award is made, either based on the appraisers' report or by court or jury on appeal therefrom. If a dispute arises concerning the division of the total award, the court in a judicial determination pursuant to K.S.A. 26-517 makes the division. In such circumstances a lessee is in a considerably different situation than if total award and the division thereof were to occur in one proceeding. However, inasmuch as the leasehold interest is a factor to be considered in determining the market value of the land, evidence relating to same may properly be presented to the jury. How then is this to be accomplished?

Conduct of condemnation proceedings is discussed in 30 C.J.S., Eminent Domain § 286, pp. 44-45, as follows:

"Jury trials in condemnation proceedings are conducted pursuant to sound legal principles and in accordance with the rules of procedure and evidence, and generally the trial is similar to that of other civil actions. This is particularly true under statutes specifically providing that condemnation proceedings are to be tried as are other causes, since such provisions merely require that the procedure conformed to that followed in other civil actions, except as specific provision is made for a departure therefrom, such as the provision that if a view by the jury is requested by either party it must be granted, as discussed supra § 288.

"It has been said that a condemnation trial is a sober inquiry into values, designed to strike a just balance between the economic interests of the public and

those of the landowner, and that the trial of such a proceeding is essentially an informational inquisition in which the boundaries of the inquiry must be liberally intrusted to the sound discretion of the trial judge. Thus, the law allows a trial judge a broad discretion as to the methods that shall be used to accomplish the best results in a jury trial of a condemnation case.

"It is generally recognized that the owner of the property being taken by condemnation is entitled to full and fair judicial proceedings, and while it is desirable, permissible, and essential that the length and expense of such proceedings be minimized, any procedure that is calculated to achieve this end must at the same time guarantee the property owners a fair opportunity to have their compensation determined from the evidence in reasonable proceedings.

"Where a number of condemnees are involved in a proceeding, the rule that the trial judge has broad discretion as to the methods which shall be used to accomplish the best results is particularly applicable; but the discretion of the trial judge in this respect is subject to limitations, and if a lessee is claiming an interest in the property condemned, the trial judge may not, as a matter of discretion, permanently exclude the lessee at the outset of the trial. The trial judge has the right to limit the introduction of cumulative evidence on the question of value, but if the issue is not being adequately presented by an owner, the court may permit a lessee to present such proof. Where several condemnees are each represented by different counsel, the court may properly limit the number of opening and closing statements that may be made, and the trial court need not, as a matter of law, extend to each counsel the privilege of cross-examination."

The above C.J.S. citation refers to condemnation trials in general, with no distinction being made between all-inclusive proceedings and bifurcated proceedings. Logically, in bifurcated proceedings the trial court should have broader discretion to limit a lessee's participation in the trial to determine the total award than where all issues will be determined in one trial.

We conclude that in a trial to determine the fair market value of the property taken, a lessee is neither wholly excluded from participation as a matter of the condemner's right nor entitled to unlimited participation therein as a matter of lessee's right. The extent of a particular lessee's participation in the trial is within the broad discretionary power of the court. In making such determination the court should consider the totality of the circumstances. Absent some abuse of that discretion the trial court's determination will not be disturbed on appeal.

We have carefully reviewed the guidelines set by the district court herein, and find no abuse of discretion under the totality of the circumstances. We note the guidelines are flexible and subject to modification as the need may arise.

No error or abuse of discretion having been shown, the interlocutory order is affirmed and the case is remanded for trial.

SCHROEDER, C.J., dissenting: My views in condemnation matters of this kind were expressed in my dissenting opinion in *Moore v. Kansas Turnpike Authority,* 181 Kan. 840, 849, 317 P.2d 384 (1957), to which I adhere. As applied to this case the lessee should be permitted to put on its evidence of the specific value of the leasehold interest. I would modify the trial court's order accordingly.