No. 61,935

CITY OF MANHATTAN, KANSAS, *Plaintiff*, v. DONALD C. SIGNOR, REBA M. LITZ, and MARY C. SIMPSON, *Defendants-Appellants*, and VIRGINIA LOUISE GRIFFITH a/k/a GINGER CLEMENS, VIRGINIA GRIFFITH a/k/a VIRGINIA STOT GRIFFITH, ELEANOR GRIFFITH, ELEANOR STOLZER, MARTHA DEAN, SISTER MARY EVAN GRIFFITH, EDWARD McGRATH, JOANN McGRATH, PHIL HOWE, MARGARET HOWE, JANET GRIFFITH, and MARY HOLLINGSWORTH, *Defendants-Appellees*.

(772 P.2d 753)

Opinion filed April 14, 1989.

*John W. Nitcher*, of Riling, Norwood, Burkhead, Fairchild & Nitcher, Chartered, of Lawrence, argued the cause and was on the briefs for appellants.

*Charles D. Green*, of Arthur, Green, Arthur, Conderman & Stutzman, of Manhattan, argued the cause was on the brief for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This appeal involves a dispute between lessors and a lessees over proper apportionment of a condemnation award. The district court, dividing the award, apportioned the majority of the award money to the lessees, and the lessors appeal.

At the time the land was condemned, it was used as a parking lot in Manhattan, Kansas. On March 7, 1986, the City of Manhattan, Kansas, filed a petition seeking to acquire the property through its power of eminent domain, as a part of its central business district redevelopment plan. On November 30, 1949, the original owners of the property, Cora A. Signor and David L. Signor, had executed a lease of the property to E.E. Griffith Coal & Lumber Company. The lease, which contained a 25-year term, was subsequently extended for an additional 25 years. But for the taking of the property by the City through the condemnation proceeding, the lease would have expired on November 30,

1999. At the time the City initiated a condemnation action, the owner of the property was Cora A. Signor, now deceased. The appellants are the heirs at law and successors in interest to Cora A. Signor: Donald C. Signor, Reba M. Kitz, and Mary C. Simpson (the Signors). The successors in interest to the leasehold interest of the E.E. Griffith Coal & Lumber Company are the appellees (the Griffiths). The 1949 lease provided for yearly rent in the amount of $600.

At the time of the condemnation action, the property was held by Arlo W. Biere and Jim R. Morris, under an expired sublease granted by the Griffiths. Biere and Morris continued as month-to-month tenants, paying a monthly rental fee of $477.65. Under the terms of the 1949 lease, the Griffiths were responsible for taxes on the property. The Griffiths also paid an annual fee of $400 to their property manager.

On April 25, 1986, the appraisers appointed by the district court filed their report on the value of the property. The appraisers, who did not attempt to calculate the value of the separate interests of the Signors and the Griffiths, concluded that the property had a fair market value of $70,000. Neither the Signors nor the Griffiths appealed from this finding, and both parties subsequently stipulated that the tract possessed a fair market value of $70,000. The property was condemned on May 1, 1986, and the present dispute involves the apportionment of the award between the successors in interest of the Signors and the Griffiths.

The district court conducted a hearing on the issue of apportionment of the condemnation award on September 9, 1987. The hearing was conducted pursuant to K.S.A. 26-517, which provides:

"**Dispute among parties as to division of award or amount of judgment; determination by court.** In any action involving the condemnation of real property in which there is a dispute among the parties in interest as to the division of the amount of the appraisers' award or the amount of the final judgment, the district court shall, upon motion by any such party in interest, determine the final distribution of the amount of the appraisers' award or the amount of the final judgment."

Both the Signors and the Griffiths introduced the testimony of their own expert witnesses to establish the value of their respective interests in the property. Dr. Edwin G. Olson, a professor of economics at Kansas State University, testified for the

Griffiths. Dr. Olson testified that the present value of the Griffiths' interest in the property was $70,407.00. His analysis assumed the continuation of the month-to-month Biere-Morris sublease tenancy. Dr. Olson also assumed an inflation factor of 4.203% and an average interest rate of 7.525%. He was not asked to separately calculate the value of the Signors' interest in the property.

Dr. David J. Faurot, a professor of economics at the University of Kansas, testified for the Signors. Dr. Faurot assumed an inflation rate of 3.66% and an interest rate of 9.3%. He testified that, using these assumptions, the present value of the property to both parties was $102,621.87. Of this amount, Dr. Faurot testified that $55,702.14 (or 54.28%) represented the present value to the Signors' interest in income under the 1949 lease, and in the reversionary interest in the property after 1999. The remainder, $46,919.73 (or 45.72%) represented the present value of the Griffiths' interest in their continued leasehold interest in the property.

Dr. Faurot also calculated the present value of the parties' interests in the property using Dr. Olson's assumptions relating to inflation and interest rates. Dr. Faurot testified that, using these assumptions, the present value of the Griffiths' interest in the property was $71,732.70. Dr. Faurot testified that this figure was slightly higher than the figure produced by Dr. Olson, since Dr. Faurot's analysis adjusts for inflation more frequently than the analysis of Dr. Olson. However, while Dr. Olson expressly disclaimed any opinion as to the value of the Signors' interest in the property, Dr. Faurot also calculated the present value of their interest in the property using Dr. Olson's assumptions. Using these figures, Dr. Faurot concluded that the present value of the Signors' interest in the property amounted to $111,483.96. Thus, of the total loss to both parties due to the condemnation of the property, the Signors' interest represents 66% of this loss, while that of the Griffiths amounted to 34% of the total loss.

The district court concluded that it was not required to apportion the parties' losses on a pro rata basis. The court noted that K.S.A. 26-517 "does not use the term apportion or allocate. It is stated in terms of providing for a 'division' and a 'final distribution.' " The court then divided the $70,000 condemnation award by granting $58,663 to lessee Griffiths, and $11,337 to lessor

Signors, concluding that "it would not be equitable to give the entire award to the tenant."

The parties disagree as to what the appropriate standard is for review in this case. The Signors suggest that this court should apply a de novo standard of review, since most of the evidence below takes the form of documentary evidence or stipulations of facts by the parties. In *Stith v. Williams*, 227 Kan. 32, 34, 605 P.2d 86 (1980) (quoting *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 336, 592 P.2d 74 [1979]), this court stated:

" 'When a case is submitted to the trial court on an agreed stipulation of facts and documentary evidence, this court is afforded the same opportunity to consider the evidence as the trial court.

" 'Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine *de novo* what the facts establish.' "

The Griffiths, on the other hand, suggest that the decision of the district court should be upheld so long as it is supported by substantial competent evidence. We find neither standard applicable to this case. *Stith v. Williams* is not controlling, since the testimony of the expert witnesses was taken in the presence of the district court. Thus, unlike the situation present in *Stith*, the district court did possess a better opportunity to evaluate the credibility of certain witnesses. On the other hand, the substantial competent evidence standard advanced by the Griffiths is not applicable. The issue in the present case is not whether the district court, applying the correct legal standards and tests, arrived at conclusions supported by sufficient facts in the record. Rather, the challenge to the district court's decision is that it used an incorrect legal standard in failing to require the proportionate division of the condemnation award. The substantial competent evidence rule, therefore, is not controlling in the present case.

The controlling issue is whether, as a matter of law, the district court erred in granting the majority of the condemnation award to the lessees. The district court correctly noted that K.S.A. 26-517 requires a "division" of the condemnation award among the parties in interest, and does not explicitly require an "allocation." K.S.A. 26-513(d) prohibits the use of the "summation

method" of evaluation and approves the "unit rule" method. K.S.A. 26-513(a) clearly requires, however, that no private property may be taken for public use "without just compensation." In *Rostine v. City of Hutchinson*, 219 Kan. 320, 323, 548 P.2d 756 (1976), we said:

"The 'summation method' denotes a process of appraisal whereby each of several items that contribute to the value of real estate are valued separately and the total represents the market value thereof. Use of this method of appraisal has generally been rejected since it fails to relate the separate value of the improvements to the total market value of the property. (1 A.L.R. 2d Anno., Eminent Domain—Valuation as Unit, p. 878.) In contrast, the 'unit rule,' which is the generally accepted method of valuation, denotes a process of appraisal whereby the total value of real estate is first determined without placing a value on each of the separate contributing items. Consideration of the value of buildings and improvements is limited to the extent they enhance the value of the land taken."

In *Phillips Petroleum Co. v. Bradley*, 205 Kan. 242, 247, 468 P.2d 95 (1970), we held that a condemnation award for property owned by several interests should be apportioned among those separate interests:

"It has long been the rule that where leased property is taken by eminent domain, it is ordinarily valued as though held in a single ownership rather than by separately valuing the interests of the lessor and lessee, and the compensation for the property taken or damaged is apportioned by the district court between the lessor and lessee according to their respective interests."

The implication contained in the district court's order that it was not required to allocate the award between the lessor and lessee according to their respective interests is in error.

Appellees contend that pro rata distribution based upon separate valuations of the lessees' and lessors' interest is precluded since, in *Phillips Petroleum*, we held that the "unit rule" was the proper method of valuation. Appellees also attempt to limit the application of *Phillips Petroleum* by noting that, in that case, the lessee received compensation for its lost interest, and the remainder of the award was then given to the landowner. However, there is nothing in *Phillips Petroleum* to suggest that the condemnation award was significantly less than that necessary to satisfy the interests of both the lessor and the lessee. The case cannot, therefore, support the proposition advanced by the Griffiths and the district court: That preference should be given to the interests of the lessee in dividing a condemnation award, where the award is insufficient to satisfy the interests of both lessor and lessee. To the contrary, although recognizing that the

"unit rule" method is used to determine the initial award, *Phillips Petroleum* supports the proposition that, in such circumstances, the award should be apportioned "between the lessor and lessee according to their respective interests"; that is, on a pro rata basis.

Nor do any other decisions of this court support the proposition that, where a condemnation award is insufficient to satisfy the interests of both lessor and lessee, the lessee should possess an exclusive and preferential right to satisfaction. Indeed, this court has simply recognized that the tenant of condemned property has "the right to *share* in compensation." (Emphasis added.) *Moore v. Kansas Turnpike Authority*, 181 Kan. 840, 847, 317 P.2d 384 (1957).

The great weight of authority also rejects any contention that any one interest should be accorded a preference in the division of the condemnation award. The principle of allocation is endorsed by 4 Nichols' Eminent Domain § 12.42[1], pp. 12-770 to -773 (3d ed. rev. 1985), which notes: "Both the lessor and the lessee are entitled to share in the award according to their respective interests. Compensation is due the lessor for damage to his reversionary interest, and to the lessee for damage to his leasehold."

29A C.J.S., Eminent Domain § 198, pp. 873-77, cited with approval by this court in *Phillips Petroleum Co. v. Bradley*, 205 Kan. at 247, also supports the principle of allocation between lessor and lessee:

"Where leased property is taken by eminent domain, it is ordinarily valued as though held in a single ownership rather than by separately valuing the interests of the lessor and the lessee, and the compensation for the property taken or injured is then apportioned between the lessor and lessee according to their respective interests. . . .

"The lessor is entitled to compensation for injuries to his reversion, and the lessee for injuries to his leasehold interests. The lessee is entitled to the market value of the unexpired term of the lease less the present value of the rent called for by the lease; while the lessor gets the present value of the rents plus the value of the remainder of the estate or the value of the fee less the award to the lessee."

Neither party should be accorded a preference in cases where the condemnation award is significantly larger or smaller than the aggregate value of the separate interests in the property.

"In a proceeding for distribution of the award, a claimant is entitled only to his equitable share of the fund and not to the absolute value of his interest. An award

in gross should be apportioned in the ratio that the damage to each interest bears to the total damage regardless of whether the award exceeds or falls short of that amount." 29A C.J.S., Eminent Domain § 197, p. 872.

The Restatement (Second) of Property explicitly supports the principle of a pro rata distribution of a condemnation award to the separate property interests. Where a condemnation action terminates a lease to real property, and the lease does not contain a provision reflecting a valid agreement to the contrary, the tenant is entitled to

"that proportion of the lump-sum award which corresponds to the proportion of the total value of the several interests in the property condemned, valued separately, that represents the value of the unexpired period of the tenant's lease, plus the value discounted to the date of the taking of the payments the tenant is required to make to the landlord even though the lease is terminated." Restatement (Second) of Property § 8.2(2)(a) (1976).

Comment *d* to this section elaborates on the procedure to be used in determining the tenant's share in the condemnation award:

"First, the separate interests in the property taken must be identified. Normally, where a lease is involved, these will be the tenant's leasehold interest and the landlord's reversion. These separate interests must then be valued separately. An element that may give the leasehold interest a value is the rent payable under the lease as compared with the rent that would have to be paid for similar rental property at the time of the taking. . . .

"Second, the values of the several interests in the property taken have to be totaled and the proportionate share of the total that represents the value of the tenant's leasehold interest will have to be ascertained. The tenant is entitled to the proportionate share of the lump-sum award that corresponds to his proportionate share of the total value of the several interests in the property condemned.

"Third, the proportionate share of the award described in the preceding paragraph is augmented by the discounted value of any payments the tenant is required to make to the landlord during the balance of the term of the original lease as a result of an agreement to make those payments even though the lease is terminated by the taking. The date of the taking is used to determine the discounted value."

Where a condemnation award for property held by separate interests is either disproportionately large or small, the award must be allocated among those interests on a proportionate basis, reflecting the value of their respective interests. This approach is not only supported by the overwhelming weight of authority, but it is also consistent with basic fairness. An approach which grants an indiscriminate preference to either the lessor or the lessee, in

cases where the award is insufficient to satisfy both interests, will often yield harsh, arbitrary, and unfair results. The present case is such an example. The present value of the lessors' interests in the condemned property is greater than that of the lessees, according to the uncontradicted testimony of Dr. Faurot, yet it is accorded only a small fraction of the compensation award. Appellees fail to present any policy argument to support such a result, and we find no reason to inflict the injustice of a disproportionately small condemnation award solely upon the lessors. A pro rata approach serves to offer results which are both more fair and more consistent.

The final issue raised by appellants is that the district court's decision violates the provisions of K.S.A. 60-252(a) and Supreme Court Rule 165 (1988 Kan. Ct. R. Annot. 102). K.S.A. 60-252(a) requires, in part: "In all actions tried upon the facts without a jury or with an advisory jury or upon entering summary judgment or involuntary dismissal, the judge shall find, and either orally or in writing state, the controlling facts." This requirement is repeated in Supreme Court Rule 165, which provides in part:

"In all contested matters submitted to a judge without a jury including motions for summary judgment, the judge shall state the controlling facts required by K.S.A. 60-252, and the legal principles controlling the decision."

The district court's journal entry of judgment is certainly spartan as to elaborating how it arrived at its division of the condemnation award in which it presented $58,663 to the lessees, and $11,337 to the lessors. The award was not within the range of the expert testimony. The record supports an award based upon a division of 54.28% to 45.72%, a 66% to 34% division, or a percentage within these ranges. *Mettee v. Kemp*, 236 Kan. 781, 696 P.2d 947 (1985). However, in view of the decision we reached on the foregoing issue, this issue is moot and need not be addressed.

The judgment of the district court is reversed and the case remanded with directions to enter a judgment allocating the award between the parties based either upon the percentage advocated by Dr. Faurot, the percentage derived from Dr. Olson's testimony, or a percentage within these ranges.