No. 63,254

IN THE MATTER OF THE ACQUISITION OF PROPERTY BY EMINENT DO-
MAIN. THE CITY OF TOPEKA, KANSAS, A Municipal Corporation,
*Plaintiff*, v. NELLIE M. MAYS ESTATE, EDWIN MAYS, EXECUTOR,
*Appellant*; PROVIDENT LIFE & ACCIDENT INS. CO.; MACERICH
CO., *Appellees*; and R. COHEN; SIEGEL MACE; JAMES C. TURNER,
SUSAN C. TURNER, and MARY L. ERNEST, Widow of F. H. ERNEST,
*Appellants*.

(781 P.2d 721)

Opinion filed October 27, 1989.

*C. Bruce Works*, of Works, Works & Works, P.A., of Topeka, argued the cause and was on the brief for appellants James C. Turner, Susan C. Turner, and Mary L. Ernest.

*Paul D. Coleman*, of Topeka, was on the brief for appellant Nellie M. Mays Estate.

*Larry E. Gregg*, of Hamilton, Gregg, Barker & Johnson, of Topeka, argued the cause and *John R. Hamilton*, of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

HERD, J: This case is an eminent domain action brought by the City of Topeka. The lessees of the condemned land filed a motion requesting the district court to distribute the appraiser's award between the lessors and the lessees pursuant to K.S.A. 26-517. This appeal is from the district court's decision on that motion.

The appellants are the lessors of the condemned property. There are two groups of lessors. The first group, James C. Turner, Susan C. Turner, and Mary L. Earnest, widow of F. H. Ernest, will be referred to as the Turners. The other group is the Nellie M. Mays Estate, Edwin Mays, Executor, which will be referred to as the Mays. The appellees, the lessees of the property, Provident Life and Accident Insurance Company, Macerich

Company, R. Cohen, and Seigel Mace, will be referred to as Macerich. Both appellants and appellees were defendants in the original eminent domain proceedings brought by the City of Topeka.

The City sought to condemn a small portion of land owned by appellants and leased by Macerich in order to construct a storm water detention pond. The condemned land is a narrow strip of land on the north edge of the appellants' properties. The condemned property on Turner Parcel 3 consists of approximately 5% of the three Turner tracts leased by Macerich. The condemned property on Mays Parcel 1 consists of less than 3% of the tract leased by Macerich.

The property taken from both the Turner and the Mays land is vacant and not presently needed for parking or other use. The condemned land on the Mays property is surrounded by other properties, giving it no street frontage. Macerich sublet the Mays property, including the condemned portion of the Mays land, to Richman-Gordman. It receives the same rent from Richman-Gordman as it did before the condemnation. Macerich has not sublet the condemned portion of the Turner land, or any part of that tract.

Macerich holds long-term leases on both the Mays and the Turner land. The leases provide for a 33-year primary term, and two 33-year extensions to be exercised at Macerich's option. On the date of taking, Macerich had already executed the first of the two 33-year options, so that 44 years remained on the primary term and the exercised option. The parties have stipulated that there are no provisions in the leases dealing with the allocation of condemnation proceeds applicable to this case.

The parties further agree the leases make no provision for a reduction in rent as a result of a partial condemnation such as the one in this case. The lessors receive the same rental payments from Macerich they received prior to the condemnation. The parties agree that, in the absence of a statute or lease provision, the lessee remains liable for the payment of rent without abatement in a partial condemnation case such as this.

Court-appointed appraisers made an award of $27,500 for the total value of the Turner land taken and damages to the remainder of the land. The appraisers awarded $52,000 for the Mays land. The City of Topeka paid the total amount of the

awards into the office of the Clerk of the District Court. No appeal was taken from the award. A dispute arose between lessors and Macerich as to the sharing of proceeds, and on February 23, 1988, Macerich filed a motion to determine the distribution of the appraisers' awards, pursuant to K.S.A. 26-517. The matter was heard on October 26, 1988.

The only testimony offered was that of James C. Turner, one of the lessors of the condemned land, and Robert Taggert, a highly qualified expert on real estate appraisals, who appeared on behalf of Macerich. Taggert testified that Macerich was damaged by the condemnation because it is required to pay full rent for land which it may no longer use. He was of the opinion Macerich should be compensated for its loss of use of the condemned land for 44 years, the remaining period of the extended leases. He testified the proper allocation to the lessor, who continues to receive full rent under a long-term lease, is that amount of money which would, at the termination of the lease, be worth the full amount of the appraisers' award.

District Court Judge Terry Bullock agreed with the expert's reasoning, and by letter decision on October 28, 1988, awarded Turners $1,962.87 and Mays $3,711.60, with the balance of the awards going to Macerich. $1,962.87 is the premium required to purchase a guaranteed annuity which will yield $27,500 in 44 years; $3,711.60 purchases an annuity yielding $52,000.

The court held that leases of such long duration convey the major interest to the lessee, and, thus, the lessee should have the major interest of the award. The court found it would be inequitable for the lessors to have both the awards in their entirety and 44 years of rent for portions of the property no longer owned by them and which Macerich could no longer use. The court acknowledged this plan would not give the lessors the benefit of any appreciation on their land, but found this to be offset by their insulation from possible depreciation and the full rentals from the condemned land for the entire lease term.

The decision of the court was filed December 22, 1988. (As a result of a typographical error, Turners are awarded $1,062.87 in the order instead of the $1,962.87 set out in the letter decision. Appellees state they would have no objection to a nunc pro tunc order correcting the amount to $1,962.87.) The lessors appealed from the court's order, and we transferred the case to this court pursuant to K.S.A. 20-3018(c).

The sole issue in this case is whether the district court erred in its allocation of the appraisers' awards between the lessors and Macerich.

The standard of review where an action has been tried upon the facts without a jury is whether the findings of the trial court are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *City of Council Grove v. Ossmann*, 219 Kan. 120, 126, 546 P.2d 1399 (1976). In making this determination, we consider the evidence in the light most favorable to the party prevailing at trial. *Schmidt v. Jensen Motors, Inc.*, 208 Kan. 182, Syl. ¶ 2, 490 P.2d 383 (1971). The trial court's findings of fact will not be set aside unless they are clearly erroneous. K.S.A. 60-252(a).

K.S.A. 26-517 does not provide guidelines for the division of a condemnation award among parties in interest. It states:

"In any action involving the condemnation of real property in which there is a dispute among the parties in interest as to the division of the amount of the appraisers' award or the amount of the final judgment, the district court shall, upon motion by any such party in interest, determine the final distribution of the amount of the appraisers' award or the amount of the final judgment."

The Eminent Domain Procedure Act, K.S.A. 26-501 *et seq.*, provides for bifurcated proceedings in determining compensation. Under the "undivided fee rule" followed in Kansas, the total award for the condemned property is determined in the first proceeding, without consideration of the competing demands of the various holders of interests in the land. Thereafter, if various parties in interest cannot agree among themselves as to the division among themselves of that award, the court allocates the award pursuant to K.S.A. 26-517. See *City of Manhattan v. Kent*, 228 Kan. 513, 618 P.2d 1180 (1980).

Ordinarily, the court turns to the lease for guidance on allocating the award. *Cf. Phillips Petroleum Co. v. Bradley*, 205 Kan. 242, 245, 250, 468 P.2d 95 (1970). In the present case, however, the leases make no provision for allocation under these circumstances. Therefore, the leases do not *exclude* Macerich from sharing in the award. While a lessee may contract away his right to condemnation compensation, he retains the right to compensation for damages in the absence of waiver. Mays makes an argument that the lease must be construed so Macerich takes nothing. This argument is without merit. First, Mays depends on

the rule that a lease is construed against its drafter. The record shows, however, the parties were uncertain who actually drafted the leases. More importantly, in light of the parties' stipulation that there is nothing ambiguous in the lease, no interpretation is appropriate. The district court was correct in so finding. The question which was before the district court, and is before us, is not the construction of the leases, but rather the determination of appropriate division under K.S.A. 26-517 in the absence of applicable provisions in the leases. Neither is this a dispute on whether the appraisers were incorrect in their damage awards. The awards were not appealed. This is merely a dispute over division of the awards.

Lessors argue Macerich is not entitled to participate in the condemnation awards because it has suffered no damages. They cite in support our language in *City of Manhattan v. Kent*, 228 Kan. at 516, where we state, "A lessee is an owner of the property and is entitled to just compensation *if his leasehold is damaged* from the exercise of eminent domain." (Emphasis supplied.)

Macerich argues it has been damaged by the condemnation because it is required to pay rent for 44 years for property it may no longer use. It points out that it could have sublet the condemned property on the Turner land, or used both the Turner and the Mays property in the future for parking or expansion. The Eminent Domain Procedure Act includes in its list of factors to be considered in ascertaining compensation for condemnation the adaptation of the property to profitable use. See K.S.A. 26-513(d)(1) and (13).

Further, the United States Supreme Court has held that the constitutional requirement of just compensation for the taking of private property for public use is addressed to every sort of interest which the citizen may possess in the physical thing taken. *U. S. v. General Motors Corp.*, 323 U.S. 373, 378, 89 L. Ed. 311, 65 S. Ct. 357 (1945).

"Even where state constitutions command that compensation be made for property 'taken or damaged' for public use, as many do, it has generally been held that that which is taken or damaged [in condemnation cases] is the group of rights which the . . . owner exercises in his dominion of the physical thing . . . .

". . . The right to occupy, for a day, a month, a year, or a series of years, in and of itself and without reference to the actual use, needs, or collateral arrangements of the occupier, has a value." 323 U.S. at 380.

The question of how to arrive at just compensation for separate

interests in partially condemned property has been the subject of much controversy. See Nichols on Eminent Domain § 12.42 (1989 Supp.) There is little accord among the jurisdictions, especially where there is no provision for abatement of rent by the lessee. Kansas has no cases on point, as this case concerns a situation in which the total value of the condemned land has already been determined and has not been appealed. Macerich cites cases where the courts have awarded the entire compensation to long-term lessees; lessors cite cases in which the entire compensation is granted the lessors. See Nichols on Eminent Domain § 12.42; Annot., 17 A.L.R.4th 337.

We have held that damages due a lessee for the taking of an *entire* leasehold are equal to the fair market value of the leasehold for the unexpired term of the lease. *Miles v. City of Wichita,* 175 Kan. 723, 267 P.2d 943 (1954); *Bales v. Railroad Co.,* 92 Kan. 771, 141 Pac. 1009 (1914).

The approach taken by the district court in the case at bar is similar to that statutorily required by the State of Massachusetts. See Mass. Gen. L. ch. 79, §§ 24, 29, 33 (1978). In *Pierson v. Leonard Furniture Co.,* 268 Mich. 507, 525, 256 N.W. 529 (1934), the Supreme Court of Michigan noted it was "much impressed with the equity" of the Massachusetts statute, which provides for the assessment of condemnation damages without apportionment between lessor and lessee, with the award placed in trust. The trustee is directed to pay the lessor from the income of the trust the value of any rent abated as a result of the condemnation. The balance of the income is paid to the lessee during the term of the lease. Upon the termination of the lease, the trustee pays the principal amount to the lessor. The district court adopted the same rationale, only simplifying the process by awarding the owner a present amount which if invested at interest will yield the full value of the condemned property to the owner at the end of the lease.

Lessors object that the trial court failed to provide for appreciation of the property over the term of the lease and that it failed to take into consideration that their damage has occurred in the present rather than in the future. They note they could have sold the properties subject to the existing leases, or Macerich could default and file bankruptcy, requiring them to re-let the properties. They present no evidence that the condemned property

would be worth more to them than they were awarded by the trial court under such speculative circumstances. Further, there is no evidence Macerich will not continue to meet its obligations under the lease agreement. Appellants agree these possibilities are speculative, but note them to illustrate their present damage. They argue they should receive the entire awards and the rent they receive for property which Macerich can no longer use may be deemed an offset to the appreciation of the property. They emphasize that Macerich had made no use of the condemned property, and contend its only loss was a liability—"a strip of grass they no longer have to mow."

While it is true that land usually appreciates in value, no evidence was offered to the trial court from which it could conclude that the property in question would appreciate in value, or by which it could determine to what extent appreciation would occur. The difficulty of trying to ascertain appreciation or depreciation of land covered by a long-term lease caused some jurisdictions to award the lessor only the continuation of full rental payment for the term. See Nichols on Eminent Domain § 12.42(3) (3d ed. 1985).

In this case we find there was substantial competent evidence to support the trial court's findings of fact and conclusions of law and an absence of evidence to support the position of the lessors.

The judgment of the trial court is affirmed and the case is remanded to correct the Turner award from $1062.87 to $1962.87.

McFARLAND and SIX, JJ., not participating.