(174 P.3d 919)
No. 97,417

GEORGE R. ISELY, AS TRUSTEE OF THE MILDRED L. ISELY TRUST, *et al.*, *Appellants*, v. CITY OF WICHITA, KANSAS, *Appellee*.

Opinion filed January 25, 2008.

*Martin W. Bauer* and *Adam T. Pankratz*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellants.

*Douglas J. Moshier*, deputy city attorney, and *Gary E. Rebenstorf*, city attorney, for appellee.

Before BUSER, P.J., KNUDSON, S.J., and BUKATY, S.J.

BUSER, J.: This is an inverse condemnation action brought by George R. Isely, as Trustee of the Mildred L. Isely Trust, *et al.* (Lessors), against the City of Wichita (City), regarding land owned by the Lessors and leased to Starr Holdings, L.L.C. (Lessee). The Lessors filed suit against the City seeking payment of just compensation as a result of the City's construction and maintenance of a roadway and utilities on the land pursuant to an easement granted by the Lessee. Both the Lessors and the City filed motions for summary judgment. The district court granted summary judgment in favor of the City, and the Lessors appeal. We reverse and remand.

## Factual and Procedural Background

The Lessors are successors in interest to H.A. Loshbaugh and Vera M. Loshbaugh, who granted a 99-year lease to College Hill Development Corp., Inc. in 1959. The Lessee is successor in interest to this developer. The land totals about 52,700 square feet and is located on the southwest corner of Hillside and Central streets in Wichita.

On October 25, 2000, the Lessee signed a "Public Street And Utility Easement" which the parties stipulated "purports to grant the City a permanent right-of-way and easement for the purpose of construction and maintenance of a roadway and utilities along and under" the land. The easement covers about 8,000 square feet along the north and west sides of the land. There was no stated limit on the easement's duration. Following dedication of the easement, the City constructed "acceleration/deceleration/turn lane improvements" to both Hillside and Central streets on the burdened portion of the land.

The Lessors did not authorize or consent to the Lessee's act of providing the City with the easement. The lease did not contain language permitting or prohibiting the Lessee's action or controlling its effect upon the Lessors. Rental payments under the lease were unaffected by the City's construction of street improvements.

The City paid neither the Lessors nor the Lessee for the easement. Prior to filing this action the Lessors demanded that the City either initiate condemnation proceedings or provide compensation. The City refused the Lessors' demand.

In district court, the City made the following argument for summary judgment:

"[The City] makes no claim that it has a permanent easement for the improvements that occupy a portion of the [land]. Likewise, [the City] understands that its rights to occupy the [land] within the [easement] are only as good as the rights that [Lessee] has in the [land]. Consequently, upon termination of [Lessee's] rights under the lease . . . , [the City] concedes that its rights to occupy the [easement] would not be binding on the [Lessors].

"[Nevertheless], until the [Lessors] have some right to occupy the [land], the [City's] maintenance of street improvements over a portion of the [land] does not infringe any of [Lessors'] property rights."

The City maintained that only upon expiration of the lease should "decisions . . . be made by the parties as to whether there is a need for acquisition of the [Lessors'] rights to that portion of the [land] affected by the [easement] or whether the [City] will abandon any claim to the [easement]."

The district court adopted the City's rationale:

"(1) The court sympathizes with [Lessors'] position. However, the court's interpretation of the applicable law requires a ruling in [the City's] favor.

"(2) The law permits the [Lessee] to grant an easement for the period of the lease. Improvements by way of turn lanes for existing city streets were constructed on the easement. At first glance this appears to be a 'taking.' However, [Lessors] are not currently entitled to possession of the property until 2058, absent a default or abandonment by the [Lessee]. [The City] acknowledges the easement lasts only for the term of the lease. As soon as the [Lessee's] right to possession ends under the lease, the easement terminates. [Lessors] will then be entitled to possession of the [land], including the area covered by the easement, and improvements. There is no 'taking' until the [Lessors] are entitled to possession and unless [the City] refuses to relinquish possession of the property covered by the expired easement."

The Lessors filed a timely appeal.

### Discussion

A "landowner asserting a claim of inverse condemnation must prove not only that the landowner owns an interest in the real

property but that the alleged condemner has taken all or a part of that interest without compensating the landowner." *Hiji v. City of Garnett,* 248 Kan. 1, 9, 804 P.2d 950 (1991). The Lessors argue the City took its property interests by occupying a portion of the land where the City has constructed permanent turn lanes and adjacent improvements. This is a question of law reviewed de novo on the uncontroverted facts. See *Kau Kau Take Home No. 1 v. City of Wichita,* 281 Kan. 1185, 1190, 135 P.3d 1221 (2006); *cf. Botkin v. Security State Bank,* 281 Kan. 243, 248, 130 P.3d 92 (2006).

"[B]oth the Fifth Amendment to the United States Constitution and Article 12, Section 4 of the Kansas Constitution guarantee payment for private property appropriated to public use." *Hiji,* 248 Kan. at 12. The Lessors rely on the Fifth Amendment, which is "applicable to the states by way of the Fourteenth Amendment." *Deisher v. Kansas Dept. of Transportation,* 264 Kan. 762, 770, 958 P.2d 656 (1998). Kansas statutes also codify these constitutional guarantees: "Private property shall not be taken or damaged for public use without just compensation." K.S.A. 26-513(a); accord *Deisher,* 264 Kan. at 770.

"[T]he constitutional requirement of just compensation for the taking of private property for public use is addressed to every sort of interest which the citizen may possess in the physical thing taken." *City of Topeka v. Estate of Mays,* 245 Kan. 546, 550, 781 P.2d 721 (1989) (citing *United States v. General Motors Corp.,* 323 U.S. 373, 378, 89 L. Ed. 311, 65 S. Ct. 357 [1945]). Neither the district court nor the City cited authority showing that the Lessors lacked a compensable interest.

Instead, the district court and the City focused on the fact that, under the lease terms, the Lessors are not entitled to possession of the land until 2058. Without present possession of the land, the district court concluded there was no taking from the Lessors for purposes of inverse condemnation until 2058. There is, however, the general rule that "[t]he ability to exercise every one of the 'sticks' or rights in the 'bundle' of fee simple rights at the time of a taking is not a prerequisite to establishing a valid property interest under the Fifth Amendment; thus, present possessory rights are

not necessary." 29A C.J.S., Eminent Domain § 72, p. 198; see also 2 Nichols on Eminent Domain § 5.02[4][b] (3d rev. ed. 2006).

In *City of Overland Park v. Dale F. Jenkins Revocable Trust,* 263 Kan. 470, 949 P.2d 1115 (1997), for example, our Supreme Court considered the apportionment of an award between a lessor and a lessee of land condemned for the purpose of acquiring rights-of-way and easements for the construction and improvement of an intersection. Our Supreme Court presumed the lessor had a compensable interest, noting "[i]t has long been the rule that where leased property is taken . . . , it is ordinarily valued as though held in a single ownership . . . and the compensation . . . is apportioned by the district court between the lessor and lessee according to their respective interests." 263 Kan. 470, Syl. ¶ 2. The court also identified the respective interests: " 'The lessor is entitled to compensation for injuries to his reversion, and the lessee for injuries to his leasehold interests.' " 263 Kan. at 477-78 (quoting 29A C.J.S., Eminent Domain § 190, p. 457); see also 5 Nichols on Eminent Domain § 16.04 (3d rev. ed. 2006) (discussing compensation for street widening).

This suggests that the Lessors, although not in current possession of the land, had a compensable interest subject to being taken for purposes of inverse condemnation.

The City argues it does not owe compensation in this case because its easement, which by stipulation "purports to be permanent," is by operation of law actually limited to the duration of the lease: "The [Lessors] . . . [set] up a straw man with their constant use of the term 'permanent' to refer to the nature of the improvements constructed on the [easement] rather than to the duration of the [easement] which is the important concept."

No public easement is permanent in an absolute sense; the fee holder retains a reversion in the case of abandonment, if nothing else. See *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.,* 231 Kan. 731, 735, 648 P.2d 1143 (1982). The mere fact that the land might someday revert to Lessors (or their successors) does not control the analysis. Instead, "[t]he paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A.*

*Inc.*, 544 U.S. 528, 537, 161 L. Ed. 2d 876, 125 S. Ct. 2074 (2005). The City's limited authority to occupy the land for the 51 years remaining on the lease does not alter the facts on the ground—the City's roadway currently occupies a portion of Lessor's land.

In *Hendler v. United States*, 952 F.2d 1364, 1375-77 (Fed. Cir. 1991), for example, a dispute arose over the permanent or temporary nature of wells the government had installed on private property. The United States Court of Appeals for the Federal Circuit held the relevant consideration for the takings analysis was the characteristics of the wells themselves:

> " 'In this context, 'permanent' does not mean forever, or anything like it. A taking can be for a limited term—what is 'taken' is, in the language of real property law, an estate for years, that is, a term of finite duration as distinct from the infinite term of an estate in fee simple absolute. [Citation omitted.]
>
> . . . .
>
> "There is nothing 'temporary' about the wells the Government installed on plaintiffs' property . . . . Years have passed since the Government installed the first wells. The wells are some 100 feet deep, lined with plastic and stainless steel, and surrounded by gravel and cement. Each well was capped with a cement casing lined with reinforcing steel bars, and enclosed by a railing of steel pipe set in cement. . . .
>
> . . . .
>
> ". . . All takings are 'temporary,' in the sense that the government can always change its mind at a later time, and this is true whether the property interest taken is a possessory estate for years or a fee simple acquired through condemnation . . . ." 952 F.2d at 1376.

We believe the Federal Circuit's reasoning is sound and applicable to the facts of this case. The City's physical occupation of the Lessors' land is as "permanent" as the wells installed in *Hendler*, whatever the eventual length of the occupation. Not only are the roadways similarly fixtures of concrete and steel, they are regularly traveled by the public. See *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 832, 97 L. Ed. 2d 677, 107 S. Ct. 3141 (1987) ("a 'permanent physical occupation' has occurred . . . where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed").

There are cases which state as a rule that lessors may not recover for temporary takings which end before the leasehold expires. See

*Tony Guiffre Distributing v. Wash. Metro. Area*, 740 F.2d 295, 299 (4th Cir. 1984); *State Dept. of Highways v. Donnes*, 219 Mont. 182, 184-85, 711 P.2d 805 (1985). These cases (which do not cite authority for their statement of one rule) appear to focus on a lack of damages to the lessor's interests under the particular facts. See *Guiffre*, 740 F.2d at 299; *Donnes*, 219 Mont. at 185. The governmental action in these cases was also in the nature of a trespass rather than the type of physical occupation at issue in our case. See *Guiffre*, 740 F.2d at 297 (temporary use of parking lot for equipment storage); *Donnes*, 219 Mont. at 185 (temporary use of haul road and generation of dust from gravel pit). "The cases state or imply that a physical invasion is subject to a balancing process, but they do not suggest that a permanent physical occupation would ever be exempt from the Takings Clause." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432, 73 L. Ed. 2d 868, 102 S. Ct. 3164 (1982) (occupation under regulatory authority).

In the present case, the district court made no findings on the Lessors' damages, holding instead that their interests were not taken as a matter of law. Given the City's physical occupation of the Lessors' land, this holding was in error. See *Kingsway Cathedral v. Dept. of Transp.*, 711 N.W.2d 6, 10 (Iowa 2006) ("Whether a taking has occurred is determined by the character of the invasion and not by the amount of damages. [Citation omitted.]"). We conclude that "temporariness—if the city succeeds at some point in showing that its action is not permanent—constitutes little more than relevant evidence in determining the amount of damages." *Kick's Liquor Store v. City of Minneapolis*, 587 N.W.2d 57, 60 (Minn. App. 1998). The district court's granting of summary judgment in favor of the City is reversed, and the matter is remanded for entry of partial summary judgment in favor of the Lessors and for a trial on the issue of damages.

Reversed and remanded.