IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,278

GFTLENEXA, LLC,
*Appellant*,

v.

CITY OF LENEXA,
*Appellee*.


SYLLABUS BY THE COURT


1.

Under the Kansas Constitution, the Supreme Court shall have such appellate jurisdiction as provided by law.


2.

K.S.A. 2018 Supp. 26-504 governs appeals in eminent domain cases and allows appeals directly to the Supreme Court when the plaintiff has power of eminent domain.


3.

Jurisdiction over appeals from final dispositions in inverse condemnation actions lies with the Court of Appeals.


4.

Failure to docket an appeal in the proper appellate court is not, on its own, grounds for dismissing an appeal.

5.

Competent adults may make contracts on their own terms, provided they are neither illegal nor contrary to public policy and, in the absence of fraud, mistake, or duress, a party that has fairly and voluntarily entered into such a contract is bound thereby, even if it was unwise or disadvantageous to that party.

6.

In an eminent domain proceeding, the duty of the condemning authority is to make payment for the property that it has taken, not to account for the diversity of interests in the property.

7.

Under the undivided fee rule, the condemning authority treats all the various interest holders in a unit of property as a single, undivided interest when the compensatory value is appraised.

8.

Privity of contract is that connection or relationship existing between two or more contracting parties. Privity between the plaintiff and the defendant with respect to the subject of the lawsuit is essential to the maintenance of any action on a contract.

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed December 6, 2019. Affirmed.

*Lumen N. Mulligan*, of DRZ Law, LLC, of Leawood, argued the cause, and *Daniel R. Zmijewski* and *Christopher Dove*, of the same firm, were with him on the brief for appellant.

*Timothy P. Orrick*, of Orrick & Erskine, LLP, of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: GFTLenexa, LLC, appeals directly to this court from a district court judgment denying it relief in an action based on contractual relationships but styled as an inverse condemnation proceeding. GFTLenexa alleges that a condemnation through an eminent domain action eventually resulted in GFTLenexa losing a constitutionally protected property interest without fair compensation. We find the district court's reasoning persuasive and affirm its judgment. We also clarify procedural rules for taking appeals in inverse condemnation actions.

FACTS

The facts giving rise to this appeal are complicated but do not require a lengthy recitation. Oak Park Commons, L.P., (which is not a party to the litigation) owns commercial property in Lenexa, Kansas. In 2007, Oak Park Commons entered into a ground lease agreement with Centres Midwest BFS, LLC (which is also not a party to this litigation). Under the agreement, Oak Park agreed to lease the property to Centres Midwest for a 20-year term.

In 2008, Centres Midwest entered into a sublease agreement with Bridgestone Retail Operations, LLC (also not a party to this litigation). The sublease authorized Bridgestone to build and operate an 8,000 square foot tire sales center on the property. On January 20, 2010, Centres Midwest assigned its rights and obligations under the lease and sublease agreements to plaintiff GFTLenexa, with the consequence that GFTLenexa

3

became Bridgestone's landlord. The assignment was filed with the Johnson County Register of Deeds on January 28, 2010.

On October 31, 2013, the City of Lenexa filed a condemnation action naming Oak Park, Firestone Auto Care (a part of Bridgestone Retail Operations, LLC), and numerous other parties as defendants, but neglecting to include GFTLenexa as a defendant. The City sought partial condemnation authority to make improvements to 95th Street Parkway. The City sought rights for a permanent public utility easement and a temporary construction easement adjacent to Oak Park's property. On November 21, 2013, Centres Midwest sent GFTLenexa by certified mail a notice of the condemnation action.

The district court granted the City's request on November 27, 2013. An appraisal was performed, and, in accordance with the appraisal report, on April 1, 2014, the district court ordered the City to pay Oak Park Commons $285,925 in just compensation for the City's exercise of eminent domain power. Neither GFTLenexa nor Bridgestone sought to intervene to assert an interest in the award, and neither was awarded any compensation.

On May 12, 2014, Bridgestone filed a declaratory judgment action against GFTLenexa, claiming it was entitled to a reduced rent because the property had been partially condemned. The district court granted GFTLenexa summary judgment under the theory that GFTLenexa did not receive any proceeds from the condemnation. The Court of Appeals reversed, holding that the plain language of the sublease agreement (which GFTLenexa had assumed in the transfer of rights) required GFTLenexa to proportionally reduce the tenant's rent. *Bridgestone Retail Operations, LLC v. GFTLenexa*, No. 114,113, 2016 WL 758730 (Kan. App. 2016) (unpublished opinion). GFTLenexa did not seek review by this court of that decision. On remand, the district court ordered GFTLenexa to

4

reduce Bridgestone's monthly rent by 14.89% for the duration of the lease and to refund $86,126.60 to Bridgestone for past overpayment of rent.

On February 17, 2017, GFTLenexa filed suit against the City, asserting an inverse condemnation action for damage to its intangible property rights resulting from the City's condemnation action. The action was predicated on its reduced rental income from Bridgestone because of the contract action that it lost in *Bridgestone Retail Operations*.

The district court denied summary judgment to GFTLenexa and granted summary judgment to the defendant, City of Lenexa. GFTLenexa took a timely appeal to this court.

ANALYSIS

*Supreme Court Jurisdiction*

GFTLenexa took this appeal directly to the Kansas Supreme Court under the theory, as stated in its notice of appeal and docketing statement, that this is an appeal in an eminent domain proceeding. We initially consider whether the Supreme Court is the proper tribunal to which an appeal such as this one should be brought.

The appellate courts have, in the past, taken inconsistent approaches to appeals from final judgments in inverse condemnation actions. In some instances, the appeals were taken directly to the Court of Appeals, which issued opinions finally disposing of the matters. See, e.g., *Isely v. City of Wichita*, 38 Kan. App. 2d 1022, 174 P.3d 919, *rev. denied* 286 Kan. 1178 (2008); *Lewis v. Globe Constr. Co.*, 6 Kan. App. 2d 478, 630 P.2d 179 (1981). In some instances, the appeals were taken to the Court of Appeals, but the Supreme Court implicitly elected to assume jurisdiction by transferring the cases. See,

5

e.g., *Frick v. City of Salina*, 290 Kan. 869, 877, 235 P.3d 1211 (2010) (appeal transferred from Court of Appeals on appellants' motion to transfer under K.S.A. 20-3017); *Garrett v. City of Topeka*, 259 Kan. 896, 898, 916 P.2d 21 (1996) (appeal transferred from Court of Appeals on court's own motion under K.S.A. 20-3018[c]).

In other instances, the Supreme Court has accepted direct appeals in inverse condemnation actions. See, e.g., *Kau Kau Take Home No. 1 v. City of Wichita*, 281 Kan. 1185, 1188, 135 P.3d 1221 (2006), *cert. denied* 549 U.S. 1265 (2007) (citing K.S.A. 26-504 as authority for this court's original jurisdiction over inverse condemnation action); *Korytkowski v. City of Ottawa*, 283 Kan. 122, 152 P.3d 53 (2007) (accepting without discussion jurisdiction over appeal docketed in Supreme Court from judgment in inverse condemnation action).

The status quo, in which appellants take their appeals to whichever court they choose, casts a cloud of uncertainty over inverse condemnation appeals. We now seek to clarify the procedures for seeking appellate review in those actions.

Under the Kansas Constitution, the Supreme Court has "such appellate jurisdiction as may be provided by law." Kansas Constitution, Article 3, § 3. Appellate courts exercise unlimited review over jurisdictional issues and have a duty to question jurisdiction on their own initiative. *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016).

Ordinarily, eminent domain proceedings are initiated by a governmental condemning authority for the purpose of acquiring an interest in private real property. Such actions are governed by statute, K.S.A. 26-501 et seq. Inverse condemnation proceedings, on the other hand, are usually initiated by holders of private property

6

interests. Such actions assert that governmental action has effectively reduced or evaporated private property interests without formally instituting eminent domain procedures. These actions are grounded in the Fifth Amendment Takings Clause and are not creatures of statute.

K.S.A. 2018 Supp. 26-504 governs appeals in eminent domain cases. It allows for appeals directly to the Supreme Court in actions initiated by the condemning authority:

"If the judge to whom the proceeding has been assigned finds from the petition: (1) The plaintiff has the power of eminent domain; and (2) the taking is necessary to the lawful corporate purposes of the plaintiff, . . . the judge shall enter an order appointing three disinterested residents of the county in which the petition is filed, . . . to determine the damages and compensation to the interested parties resulting from the taking. . . . The granting of an order determining that the plaintiff has the power of eminent domain and that the taking is necessary to the lawful corporate purposes of the plaintiff shall not be considered a final order for the purpose of appeal to the supreme court, but an order denying the petition shall be considered such a final order.

"Appeals to the supreme court may be taken from any final order under the provisions of this act. Such appeals shall be prosecuted in like manner as other appeals and shall take precedence over other cases, except cases of a like character and other cases in which preference is granted by statute."

Appeals directly to the Supreme Court are thus authorized when *the plaintiff* has the power of eminent domain. No such statutory provision exists for direct appeals from nonstatutory causes of action seeking compensation from the government.

K.S.A. 60-2101(a) provides that the Court of Appeals has "jurisdiction to hear appeals from district courts, except in those cases reviewable by law in the district court

7

and in those cases where a direct appeal to the supreme court is required by law." We therefore conclude that the Court of Appeals properly exercises jurisdiction over appeals from district court orders finally disposing of inverse condemnation claims, whether those appeals are brought by the plaintiff possessing a property interest or by a defendant government entity.

Applying this rule to the present case, we decide that GFTLenexa improperly docketed this appeal with the Supreme Court. This is not, however, grounds for dismissing the appeal. See K.S.A. 20-3018(a) ("No case docketed either in the supreme court or the court of appeals shall be dismissed solely for the reason of having been filed in the wrong court . . . .").

We could, of course, now transfer the appeal to the Court of Appeals under K.S.A. 20-3018(a) ("Any case within the jurisdiction of the court of appeals which is erroneously docketed in the supreme court shall be transferred by the supreme court to the court of appeals."). This court has, however, already heard oral argument from the parties, and we conclude that little would be served by compelling them to reargue the case before a different court when this court may exercise jurisdiction over it.

This court exercises concurrent jurisdiction with the Court of Appeals over all appeals over which the Court of Appeals has jurisdiction, as well as exclusive jurisdiction over certain appeals—such as eminent domain appeals—as designated by statute. See K.S.A. 60-2101(b) ("The supreme court shall have jurisdiction to correct, modify, vacate or reverse *any* act, order or judgment of a district court . . . ." [Emphasis added.]). Because we are clarifying the rules for appellate court jurisdiction, we elect to retain jurisdiction in this particular case and will dispose of the matter before us on the merits.

8

*GFTLenexa's Claim Against the City*

The district court entered judgment based on competing motions for summary judgment. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. See *Northern Natural Gas Co. v. ONEOK Field Services Co.,* 310 Kan. 644, 448 P.3d 383, 388 (2019).

Proceeding under the Kansas Eminent Domain Procedure Act, K.S.A. 2018 Supp. 26-501 et seq., the City partially condemned some property. The City did not contest the appraised value and paid the property owner the full appraised amount. GFTLenexa, a sublessee of the property owner, did not contest the eminent domain action and did not seek to intervene to obtain an equitable share of the condemnation proceeds. GFTLenexa also did not pursue compensation from the property owner, perhaps because it had contracted away its indemnification rights. GFTLenexa nevertheless contends that it has been deprived of a property interest without due process and without compensation.

The parties agree that the eminent domain petition did not name GFTLenexa as a party having an interest in the subject property. The parties also agree that the property

9

owner, Oak Park, informed GFTLenexa by certified letter that an eminent domain action involving the property had been initiated. As it stated in its petition in the present case, GFTLenexa "chose not to intervene" in the condemnation action. GFTLenexa had actual notice of the eminent domain proceeding and elected not to participate.

We do not condone the City's failure to include GFTLenexa in the eminent domain proceeding: governmental entities are not entitled to seize property without notice and without compensation. See *Creegan v. State*, 305 Kan. 1156, 1170, 391 P.3d 36 (2017); K.S.A. 26-502. Quite to the contrary, notice is an essential element of the process that is due before property may be seized. See, e.g., *Board of Reno County Comm'rs v. Akins*, 271 Kan. 192, 196, 21 P.3d 535 (2001). But we do not find that the City's omission of GFTLenexa from the eminent domain proceedings supports GFTLenexa's inverse condemnation action.

GFTLenexa argues that intervention was not an option: having been omitted from the original pleadings, it was barred from intervening or asserting a property interest during the original eminent domain proceeding. GFTLenexa claims that its omission as a participant in the eminent domain proceeding made it impossible for it to assert any rights in that action. It cites to *State Highway Commission v. Bullard*, 208 Kan. 558, 493 P.2d 196 (1972), as holding that a party not served in an eminent domain action is precluded from intervening in the action. This assertion misreads *Bullard*.

In *Bullard*, a government authority undertook an eminent domain action that included property on which the appellant had a leasehold interest. The condemning authority subsequently removed that particular tract from the property over which it sought to exercise eminent domain. The appellant, no longer a party by right, sought to intervene to assert a claim for compensation for damage to his property interests.

10

This court held that a condemning authority has the statutory right to abandon condemnation as to particular tracts within certain time restrictions, and those with interests in the tracts have no standing to oppose abandoning the condemnation. 208 Kan. at 561. Having no interest in property subject to condemnation, the leaseholder lacked standing to intervene in the condemnation action "under the facts and circumstances." 208 Kan. at 561. The proper recourse in that instance was an action for inverse condemnation. 208 Kan. at 562.

The *Bullard* situation differs from the present case in a significant respect: here, GFTLenexa had an interest in property that *was* subject to condemnation. It clearly had a legal interest in the property and could have asserted whatever right it wanted to protect by intervening and arguing for a different appraised value or a different apportionment of the award. Unlike the leaseholder in *Bullard*, GFTLenexa had recourse other than inverse condemnation—it could have, and perhaps should have, sought leave to intervene. Whether intervention would have entitled GFTLenexa to a share of the award is a question that we need not address; suffice it to say, it appears that, in assuming the terms of the ground lease, GFTLenexa bargained away its right to claim any part of an eminent domain compensation.

In *City of Roeland Park v. Jasan Trust*, 281 Kan. 668, 673-75, 132 P.3d 943 (2006), this court held that parties to leasing relationships may enter into enforceable agreements regarding the distribution of condemnation awards. Discussing the contractual assignment of loss through eminent domain to GFTLenexa, the district court observed that GFTLenexa freely negotiated those terms:

11

"[O]ne can only presume the risks that were allocated were also contemplated in setting the price or consideration for acquisition. Likewise, when the sublease was drafted contemplating a reduction in rent if a condemnation occurred, one must also presume that provision (*i.e.*, that the sub-Lessor might lose part of its leasehold interest and not be compensated for that loss) had a part in the calculus used by those parties to the sublease in arriving at the rent price in the first instance."

The loss that followed from its contractual rights and obligations did not create for GFTLenexa an equitable right to compensation from a third party.

"American courts have traditionally taken the view that competent adults may make contracts on their own terms, provided they are neither illegal nor contrary to public policy and, in the absence of fraud, mistake, or duress, that a party who has fairly and voluntarily entered into such a contract is bound thereby, notwithstanding it was unwise or disadvantageous to that party." *Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 670-71, 876 P.2d 1362 (1994).

By waiting to assert a right impaired by the City's condemnation, GFTLenexa seeks to force the City to pay twice for the same property—once through the eminent domain proceeding and once through the inverse condemnation proceeding. Allowing such a double remedy would violate the undivided fee rule.

Under the undivided fee rule, the condemning authority treats all the various interest holders in a unit of property as a single, undivided interest when the compensatory value is appraised. The interest holders may seek adjudication of the allocation of the total compensation in a separate court action. See K.S.A. 26-517. At that time, the condemning authority no longer has a stake in the proceedings, having paid the full amount of the value diminished by the condemnation:

12

"'It has long been the rule that where leased property is taken by eminent domain, it is ordinarily valued as though held in a single ownership rather than by separately valuing the interests of the lessor and lessee, and the compensation for the property taken or damaged is apportioned by the district court between the lessor and lessee according to their respective interests. The condemner has no interest in the apportionment proceedings. It has met its obligation when it has paid into court the total amount of the award. (29A C.J.S., Eminent Domain, § 198, p. 873.)'" *City of Manhattan v. Kent*, 228 Kan. 513, 517, 618 P.2d 1180 (1980) (quoting *Phillips Petroleum Co. v. Bradley*, 205 Kan. 242, 247, 468 P.2d 95 [1970]).

Thus, in an eminent domain proceeding, the duty of the condemning authority is to make payment for the property that it has taken, not to account for the diversity of interests in the property. The public pays what the land is worth, and the amount to be paid is divided among the various claimants according to the nature of their interests. *City of Manhattan*, 228 Kan. at 518.

GFTLenexa essentially abandoned any claim to compensation when it elected not to intervene in the eminent domain proceeding and made no effort to nullify that proceeding afterwards. It may not later seek greater compensation than the full compensation that the City already paid to the property owner based on an uncontested statutory appraisal.

GFTLenexa seeks to make the City liable for revenue it lost under the terms of its lease and sublease agreements, pointing to a clause in the ground lease agreement putatively creating a right of action against the City:

13

"In the event of any condemnation or conveyance in lieu thereof of the Leased Premises, whether whole or partial, Tenant shall have no claim against Owner or the condemning authority for the value of the unexpired term and Tenant shall not (except as otherwise specifically provided in this paragraph) be entitled to any part of the compensation or award . . . PROVIDED, HOWEVER . . . *Tenant shall have the right to claim and recover from the condemning authority (but not from Owner) such compensation as may be separately awarded to Tenant in Tenant's own name and right on account of all damages to Tenant's business by reason of the condemnation . . . .*" (Emphasis added.)

GFTLenexa pins its case on the theory that it could contractually create a cause of action against a stranger to the contract. GFTLenexa seeks support for this theory in *Jasan Trust*, pointing to this court's holding that "parties are free to contract around eminent domain rules." 281 Kan. at 677. This argument misreads *Jasan Trust.*

*Jasan Trust* was an eminent domain action in which the various parties, including the City of Roeland Park, were able to assert their interests. Unlike that case, the present case was initiated years after the eminent domain action was completed and the compensation was awarded, paid out, and distributed. Furthermore, in *Jasan Trust*, the condemning authority was neither an appellant nor an appellee—it was a neutral party. The parties in conflict were the parties whose relationship was contractual, and this court held that parties to a contract are permitted to make enforceable contractual provisions for how condemnation awards are to be distributed among themselves. *Jasan Trust* does not hold that parties may contractually bind a condemning authority, such as the City, to pay out more than the total appraised value of the condemned property.

This court has stated that "[c]ontracting parties are presumed to act for themselves." *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, Syl. ¶ 6, 107 P.3d 1219 (2005). In the absence of a third-party beneficiary, a contract binds only the parties

that enter into the contract; it is not enforceable against a third party that did not negotiate the contract, did not accept the terms of the contract, and did not receive any consideration for the contract. See *Bodine v. Osage County Rural Water Dist. No. 7*, 263 Kan. 418, 428, 949 P.2d 1104 (1997); *Earl E. Roher Transfer & Storage Co. v. Hutchinson Water Co.*, 182 Kan. 546, Syl., 322 P.2d 810 (1958). GFTLenexa seeks to enforce its contract against a party that was not in privity of contract with the parties to the lease and sublease.

As this court has held, "Privity of contract is that connection or relationship which exists between two or more contracting parties. *It is essential to the maintenance of any action on a contract that there be privity between the plaintiff and the defendant in respect to the matter sued on.*" (Emphasis added.) *Reliance*, 278 Kan. 777, Syl. ¶ 4. There was no privity of contract between the City and GFTLenexa, and GFTLenexa is precluded from asserting a right under its contract with Centres Midwest to sue the City based on a contract clause allowing it to take a separate action against a condemning authority.

A party asserting a claim of inverse condemnation must prove not only that the party owns an interest in the real property but that the alleged condemner has taken all or a part of that interest without compensation. *Hiji v. City of Garnett*, 248 Kan. 1, 9, 804 P.2d 950 (1991).

Here, the landowner was compensated. While GFTLenexa tries to argue that it has separate property rights as a lessee and sublessor, the proper venue to assert those rights was in the eminent domain proceeding, even if it could not have successfully asserted them there because it voluntarily surrendered those rights through its contractual obligations.

15

CONCLUSION

We find no error in the reasoning or conclusions of the district court. The judgment of the district court is affirmed.

JEFFREY E. GOERING, District Judge, assigned.[1]

_____

[1]**REPORTER'S NOTE:** District Judge Goering was appointed to hear case No. 119,278 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court created by the retirement of Justice Johnson.